PEOPLE v PETROS

Docket No. 140430. Submitted August 4, 1992, at Detroit. Decided
    March 1, 1993, at 9:40 A.M. Leave to appeal sought.

Basam Petros and Michael Dinoffria were charged in the Detroit
    Recorder's Court with first-degree murder, arson, and posses-
    sion of a firearm during the commission of a felony in connec-
    tion with the shooting death of Hermis Toma and the burning
    of his house. The defendants' trials were severed. In the Petros
    case, the prosecution moved for the admission of statements
    made by Dinoffria to the police that he shot Toma with Petros'
    gun at Petros' request, that he took money and checks from
    Toma's body and set fire to the body at Petros' direction, and
    that he and Petros divided the money taken from Toma. The
    court, after conducting combined hearings with respect to the
    voluntariness of Dinoffria's statements and the prosecution's
    motion for the admission of the statements as substantive
    evidence against penal interest, determined that the statements
    were voluntary, but denied the motion for admission. The
    prosecution appealed by leave granted.

    The Court of Appeals held:

    A nontestifying codefendant's inculpatory statement may be
    admitted as substantive evidence against a defendant without
    violating the Confrontation Clause, US Const, Am VI; Const
    1963, art 1, § 20, where a firmly rooted hearsay exception
    applies or where the presumptive unreliability of the statement
    is rebutted by particularized guarantees of trustworthiness.
    Considerations in assessing reliability include whether the
    codefendant was offered leniency in exchange for the state-
    ment, the statement is strongly against the codefendant's penal
    interest, the codefendant attempted to shift responsibility for
    the alleged offense to the defendant, and there is independent
    evidence substantially corroborating the statement.

    In this case, the presumptive unreliability of Dinoffria's
    statements was rebutted by particularized guarantees of trust-
    worthiness. The statements therefore were properly admissible,

REFERENCES

Am Jur 2d, Evidence § 539.
See ALR Index under Confessions and Admissions.

and the question whether the hearsay exception for statements against penal interest is firmly rooted in Michigan need not be decided. Moreover, the requirements of the Confrontation Clause were satisfied because Dinoffria had testified at Petros' preliminary examination and at the suppression hearing and had been available for cross-examination by Petros.

Reversed and remanded for admission of the statements into evidence.

CRIMINAL LAW — EVIDENCE — HEARSAY — CONFESSIONS BY CODEFENDANTS — CONSTITUTIONAL LAW — CONFRONTATION CLAUSE.

A nontestifying codefendant's inculpatory statement may be admitted as substantive evidence against a defendant without violating the Confrontation Clause where a firmly rooted hearsay exception applies or where the presumptive unreliability of the statement is rebutted by particularized guarantees of trustworthiness (US Const, Am VI; Const 1963, art 1, § 20).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief of Research, Training, and Appeals.

*James D. O'Connell,* for the defendant.

Before: CORRIGAN, P.J., and MICHAEL J. KELLY and GRIFFIN, JJ.

CORRIGAN, P.J. The Wayne County Prosecutor appeals by leave granted the lower court's denial of his motion to admit codefendant Michael Dinoffria's January 11, 1991, statement as evidence. Defendant Basam Petros is charged in the Detroit Recorder's Court with first-degree murder, MCL 750.316; MSA 28.548, arson of real property, MCL 750.73; MSA 28.268, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.484(2). Dinoffria's statement was offered as a declaration against penal interest pursuant to

MRE 804(b)(3).[1] The question presented is whether the substantive use of Dinoffria's statement, which qualifies as a declaration against penal interest, would violate the Confrontation Clause, US Const, Am VI. We hold that it would not, and that the prosecution has met its weighty burden under *Lee v Illinois,* 476 US 530; 106 S Ct 2056; 90 L Ed 2d 514 (1986), to overcome the presumptive unreliability of a codefendant's statements. We thus reverse and remand with directions to admit Dinoffria's statement against Petros.

On December 20, 1990, Petros and Dinoffria saw Hermis Toma, Petros' uncle, at a gas station. They observed that Toma had about $200 in cash. Toma, Petros, and Dinoffria then drove to Toma's house in Toma's car. During the trip, Petros signaled to Dinoffria that he wanted to shoot Toma.

At Toma's house, Petros and Toma argued about some disability checks that Petros had allegedly stolen from his uncle. While Toma was out of the room, Petros asked Dinoffria to "do him a favor" and shoot Toma. Dinoffria complied. Using Petros' gun, he shot Toma three times in the head. Dinoffria then asked Petros, who lived nearby, to get more bullets, because he thought Toma might still be alive. Petros went to his house for more bullets. Toma was dead when Petros returned. Dinoffria removed the money and some checks from Toma's body. Petros covered the body with a blanket and

---

[1] MRE 804(b)(3) provides:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \*

(3) *Statement against interest.* A statement which was at the time of its making . . . tended to subject [the declarant] to civil or criminal liability, . . . that a reasonable person in his position would not have made the statement unless he believed it to be true.

he and Dinoffria set fire to the body and the house. Petros and Dinoffria left the house and hid the murder weapon. The house was severely damaged by fire.

Petros was subsequently arrested and charged. Three days after the murder, Dinoffria initially implicated Petros in a statement to Sergeant Ronald Gale, the investigating Squad Six Homicide officer, while denying his own participation. Held as a material witness, he once again inculpated Petros as the shooter during the preliminary examination, at which time Petros first had an opportunity to cross-examine him. Dinoffria was released to a juvenile home after the preliminary examination.

While still in custody as a material witness, Dinoffria called his friend Ricardo Briones several times. While absent without leave, on January 8, 1991, Dinoffria personally talked to Briones. According to Briones, the substance of that conversation was that Dinoffria told him that "if the police would have come and got him [Dinoffria] first, he would have told them that he did it but they got [Basam] first and he put me in it and if one of us go down we both go [sic] down because we were both in it." Dinoffria told Briones that he had killed Toma at Petros' request with Petros' gun, and he showed Briones the murder weapon.

Briones later retrieved the hidden gun, turned it over to the police, and implicated Dinoffria as the shooter. On January 11, 1991, Dinoffria was arrested and questioned again by Sgt. Gale. After being advised of his rights under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), Dinoffria admitted the salient facts in a manner consistent with Briones' report. Dinoffria admitted having lied previously to Sgt. Gale. He admitted pulling the trigger and taking Toma's

money. Dinoffria stated that Petros had suggested that he shoot Toma to cover up Petros' theft of his uncle's social security checks. Petros told him to take Toma's money and to set fire to the blanket covering the corpse. He also stated that he and Petros hid the gun together and split the stolen money equally. Dinoffria himself wrote on the typewritten statement, "I did it and nobody else should be involved in this." Dinoffria also wrote in longhand and initialed typewritten responses to other questions about his statement,[2] and made a series of recorded responses to questions about the voluntariness of the statement.

The original charges against Petros were dismissed and immediately refiled against Petros and Dinoffria. Both defendants waived preliminary examination. Upon stipulation of the parties, the court severed the trials by order dated April 26, 1991, thus eliminating problems described in *People v Banks,* 438 Mich 408; 475 NW2d 769 (1991).

The prosecutor moved to introduce Dinoffria's January 11, 1991, statement as a statement against penal interest pursuant to MRE 804(b)(3). At a combined hearing pursuant to *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965), and a hearing on the prosecutor's motion to admit, Dinoffria testified and was again made subject to questioning by Petros. In this combined proceeding, Dinoffria testified that his January 11, 1991, statement was untrue and coerced, and that neither he nor Petros had been involved in Toma's murder. Defense counsel for

---

[2] "Is this statement the entire truth" (Yes); "Is there anything you would like to add" ("I did it and nobody else should be involved in this"); "Is there anything you would like to change?" (No); "Is there anything that you would like to take out?" (No); "Have you read your entire statement?" (Yes); "Is this the statement that you have just made?" (Yes); "Is this statement the actual truth?" (Yes); "Did you make this statement of your own free will and was it voluntarily given?" (Yes).

Petros interposed objections to the prosecutor's questions, but declined the opportunity to question Dinoffria. He had no reason to question Dinoffria, because Dinoffria's recantation of his prior inculpatory statements achieved every purpose a searching cross-examination could have produced. Because Dinoffria completely exculpated his client, further questioning would have been superfluous and unwise. The court denied Dinoffria's motion to suppress, determining his January 11, 1991, statement to have been voluntary in all respects. It also concluded his current testimony was incredible. Nonetheless, the prosecutor's motion to admit Dinoffria's statement was denied.

After the prosecution's application for leave to appeal was granted, our Supreme Court decided *People v Watkins,* 438 Mich 627; 475 NW2d 727 (1991), cert den — US —; 112 S Ct 933; 117 L Ed 2d 105 (1992). Because *Watkins* did not command a majority of the justices, it lacks precedential value.[3] *Watkins* involved five defendants tried jointly for murder, attempted murder, and kidnapping. Statements of two codefendants were admit-

---

[3] At least one panel of this Court has suggested that *Watkins, supra,* is binding precedent, *People v Spearman,* 195 Mich App 434, 441; 491 NW2d 606 (1992), stating: "Spearman correctly points out that a nontestifying codefendant's confession is inadmissible against a defendant." A panel of this Court "must follow *the rule of law established by a prior published decision.* . . ." Administrative Order No 1990-6, 436 Mich lxxxiv (emphasis supplied). We are not bound by *Spearman's* mere citation of *Watkins,* because it is not truly "a rule of law established by a prior published decision." The *Spearman* opinion overstates even the lead opinion's position in *Watkins.* While the Chief Justice did say that "accusatory statements in codefendant confessions will almost never properly qualify as statements against interest," 438 Mich 646-647, the opinion did not make a blanket assertion that "a nontestifying codefendant's confession is inadmissible against a defendant." *Spearman, supra* at 441. *Spearman* cites *People v Banks,* 438 Mich 408, 420-421; 475 NW2d 769 (1991), for the same proposition, although *Banks* holds only that even a redacted statement may be inadmissible, not that such statements are never admissible.

ted against the remaining codefendants, under MRE 804(b)(3), as declarations against penal interest. None of the five testified at the trial. All were convicted, and this Court affirmed. 178 Mich App 439; 444 NW2d 201 (1989).

The Supreme Court reversed the three codefendants' convictions in a split opinion. The four justices who voted to reverse provided no controlling rationale.[4] Chief Justice CAVANAGH and Justice LEVIN opined that MRE 804(b)(3) should be narrowly applied. 438 Mich 636-638, 645-646. They rejected the so-called "carry-over rule," which allows admission of an entire hearsay statement if a portion is against the declarant's "penal interest." *Id.* at 634. Four justices did recognize the test articulated in *Lee v Illinois, supra* at 545, i.e., a codefendant's statement against a defendant is presumptively unreliable because of the desire to shift blame, to curry favor, to avenge the speaker, or to direct attention to another. 438 Mich 645. See also *Banks, supra.*

---

[4] The Michigan Supreme Court must decide cases by concurrence of a majority of the justices voting. MCR 7.316(C). To create binding precedent, a majority must agree on a ground for decision. If a majority merely agrees to a particular result, then the parties are bound by the judgment, but the case provides no binding authority beyond the immediate parties. *People v Anderson,* 389 Mich 155, 170; 205 NW2d 461 (1973). See also, e.g., *Swickard v Wayne Co Medical Examiner,* 438 Mich 536, 570, n 15; 475 NW2d 304 (1991) (opinion of LEVIN, J.) (where no opinion signed by four justices has ruled that interpretation of Freedom of Information Act employed by majority is applicable, it is not binding under *stare decisis*); *United Plant Guard Workers of America v Dep't of State Police,* 422 Mich 432, 439; 373 NW2d 713 (1985) (opinion of evenly decided Court in decision employing balancing test for FOIA requests did not adopt a controlling test); *Groening v McCambridge,* 282 Mich 135, 140; 275 NW 795 (1937) (where only two justices concurred, language is not binding authority). Plurality decisions, in which no majority agrees to the reasoning, are not binding under the doctrine of *stare decisis. Negri v Slotkin,* 397 Mich 105, 109; 244 NW2d 98 (1976). See also *In re Curzenski Estate,* 384 Mich 334, 336; 183 NW2d 220 (1971), overruled on other grounds 409 Mich 67; 293 NW2d 315 (1980) (opinion supported by only four justices is not precedent); *Hileman v Indreica,* 385 Mich 1, 7, n 1; 187 NW2d 411 (1971) (same).

Justice BRICKLEY's concurrence, signed by Justice GRIFFIN, concluded:

> I agree with the result reached by the Chief Justice that the trial court erroneously allowed admission of the codefendant's confessions *under the facts presented* . . . . The Chief Justice's position that the statement against interest hearsay exception is not based on the circumstances surrounding the giving of the statement, but on its contents and therefore admissibility should be limited to only those statements contrary to the declarant's penal interest has considerable logic. However [because the question was not briefed in this case], I decline to endorse the Chief Justice's reasonings regarding the so-called carry-over rule in the context of declarations against penal interest. [*Id.* at 677. Emphasis added.]

The remaining three justices dissented. 438 Mich 678-705. Justice RILEY concluded, "Since a majority has not been reached regarding how inculpatory statements can be used in future cases, they leave this issue open for another day." *Id.* at 705, n 33; see also *id.* at 678, n 1.

*Watkins* thus does not flatly proscribe the admission of declarations against penal intent. We think that adoption of such a blanket preclusion would prevent both the evolution of the law of evidence and the development of Confrontation Clause principles. Such difficult questions of admissibility and constitutionality cannot be resolved by bright line rules and should be decided case by case. We think that in adopting MRE 804(b)(3), the Michigan Supreme Court did not intend to foreclose the admission of qualifying evidence, but rather to permit the admission of those declarations against penal interest that satisfy the Confrontation Clause. See FRE 804(b)(3); *United States v York,* 933 F2d 1343, 1361 (CA 7, 1991).

The admissibility of a nontestifying codefendant's inculpatory statement as substantive evidence presents two distinct but related issues. The first is the status of the proffered evidence as hearsay, MRE 802. The second is the concern that admitting such testimony will violate the defendant's right "to be confronted with the witnesses against him." US Const, Am VI; Const 1963, art 1, § 20.

In *Ohio v Roberts,* 448 US 56, 63; 100 S Ct 2531; 65 L Ed 2d 597 (1980), the Supreme Court decided that "the [Confrontation] Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' " *Id.* at 66. Hearsay statements will be admissible where they bear sufficient "indicia of reliability." *Id.* at 67.

> [W]hen a hearsay declarant is . . . unavailable . . . his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. [*Id.* at 66.]

"[A] statement that qualifies for admission under a 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *White v Illinois,* 502 US —; 112 S Ct 736, 743; 116 L Ed 2d 848 (1992). The goal should be to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior [hearsay] statement." *Roberts, supra* at 66, citing *California v Green,* 399 US 149, 161; 90 S Ct 1930; 26 L Ed 2d 489 (1970) (admissibility of prior testimony when declarant unavailable for cross-examination).

*Roberts, supra,* was affirmed in *Idaho v Wright,* 497 US 805; 110 S Ct 3139; 111 L Ed 2d 638 (1990): "[T]he [Confrontation] Clause permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Id.* at 814, citing *Maryland v Craig,* 497 US 836, 847-848; 110 S Ct 3157; 111 L Ed 2d 666 (1990).[5]

> We think the "particularized guarantees of trustworthiness" required for admission under the Confrontation Clause must likewise be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. Our precedents have recognized that statements admitted under a "firmly rooted" hearsay exception are so trustworthy that adversarial testing would add little to their reliability. [*Wright, supra* at 820-821.]

The Court, however, "decline[d] to endorse a mechanical test for determining 'particular guarantees of trustworthiness' under the Confrontation Clause." *Id.* at 822.

A hearsay statement of a nontestifying codefendant may be admitted as substantive evidence against a defendant in alternative ways. If it would be admissible under a "firmly rooted" exception to the hearsay rule, the Court has determined that it also complies with the requirements of the Confrontation Clause. Alternatively, if no "firmly rooted" exception applies, the statement may still be admissible if it presents "particularized guarantees of trustworthiness." We hold that Dinoffria's

[5] We distinguish the preceding line of cases from *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), and its progeny, because this case does not involve the admissibility of a codefendant's confession against that codefendant in a joint trial.

statement should be admitted under the latter analysis.

## DECLARATIONS AGAINST PENAL INTEREST

MRE 804(b)(3) provides:

> (b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . (3) *Statement Against Interest.* A statement which was at the time of its making . . . so far tended to subject [the declarant] to civil or criminal liability, . . . that a reasonable person in his position would not have made the statement unless he believed it to be true.

The reach of the "penal interest" exception has been the subject of considerable examination under both the Michigan and the Federal Rules of Evidence.[6] The dissent in *Watkins,* after examining the history of the rules of evidence[7] (see 438 Mich 684-686), concluded:

> [T]he drafters did not intend MRE 804(b)(3) to be meaningless in its application with regard to inculpatory statements. Under my colleagues' approach, the only function the rule would have is to permit the introductions of admissions, an element already covered by MRE 801(d)(2). This blanket exclusion would deprive the rule of much of its force because a large number of exculpatory statements are collateral. [438 Mich 689-690.]

---

[6] FRE 804(b)(3) is virtually identical to MRE 804(b)(3):

> A statement which . . . at the time of its making . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

[7] The "against penal interest" exception to the hearsay rule dates back to a nineteenth-century British case; see *Thomas v State,* 580 NE2d 224, 225-226 (Ind, 1991).

See also *United States v Barrett,* 539 F2d 244, 252 (CA 1, 1976), where the First Circuit Court of Appeals recognized, "[I]t [does not] appear that Congress intended to constrict the scope of a declaration against interest to the point of excluding 'collateral' material that, as here, actually tended to fortify the statement's disserving aspects" (citing legislative history of the Federal Rules of Evidence).

Perhaps because of the breadth of the task, the United States Supreme Court has not found the varying permutations of the "declarations against penal interest" exception "firmly rooted." Four justices, however, concurred in Justice Blackmun's dissenting opinion in *Lee v Illinois, supra:*

> The hearsay exception for declarations against interest is firmly established; it rests upon "the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect." [476 US 551, citing 5 Wigmore, Evidence (Chadbourn rev), § 1457, p 329.]

Some lower state and federal courts have found the "penal interest" exception "firmly rooted," that is, an exception whose requirements are equivalent to those of the Confrontation Clause. *State v Tucker,* 109 Or App 519, 526; 820 P2d 834 (1991); *United States v Seeley,* 892 F2d 1, 2 (CA 1, 1989).

We express no opinion as to whether the penal interest exception is firmly rooted in Michigan. Such a ruling is unnecessary in this case because sufficient circumstantial guarantees of trustworthiness satisfy the dictates of the Confrontation Clause.

In this context, *State v Earnest,* 106 NM 411;

744 P2d 539 (1987), cert den 484 US 924 (1987), is highly persuasive because of its factual similarity to this case. Three men were arrested for murder. One of them, Phillip Boeglin, inculpated himself and Ralph Earnest, one of the other two men. 106 NM 412. Boeglin refused to testify at Earnest's trial. The court admitted Boeglin's earlier statement, finding it met the "indicia of reliability" requirement. *Id.* The New Mexico Supreme Court held that Earnest was entitled to a new trial because he had had no opportunity to cross-examine Boeglin, *id.* at 411, but the United States Supreme Court vacated that decision and remanded the case in light of *Lee v Illinois, supra. New Mexico v Earnest,* 477 US 648; 106 S Ct 2734; 91 L Ed 2d 539 (1986). In ordering the remand to the New Mexico court, the United States Supreme Court observed that a lack of cross-examination due to unavailability is not fatal to admissibility of a codefendant's statement. A weighty presumption of unreliability attaches to a codefendant's statement, but the state may overcome the presumption by proving that the statement bears sufficient indicia of reliability. 477 US 649-650.

On remand, the New Mexico Supreme Court decided that Boeglin's statement was reliable enough to justify admission:

> It was reliable, first, because *the colloquy between Boeglin and the investigating officers reflects the fact that Boeglin was not offered any leniency in exchange for his statement.* In fact, Boeglin was convicted of murder and is serving a life sentence. It was reliable, second, because *the statement was strongly against Boeglin's penal interest.* Boeglin admitted that it was he who tried to cut the victim's throat and it is clear from the colloquy that at the time the statement was given the wounds to the throat were though[t] to have

been the cause of death. Moreover, Boeglin was exposed to a possible sentence of death as a result of his admitted participation in a murder committed under aggravating circumstances, i.e., during the course of a kidnapping and with the purpose of killing a witness. The statement was reliable, third, because *Boeglin did not attempt in the statement to shift responsibility* from himself to his accomplices. He told a gruesome story which equally implicated all three men. And the statement was reliable, finally, because *there was independent evidence presented at trial which substantially corroborated Boeglin's description of events surrounding the murder.* [106 NM 412; emphasis supplied.]

See also, e.g., *United States v Vernor,* 902 F2d 1182, 1188 (CA 5, 1990), cert den 498 US 922; 111 S Ct 301; 112 L Ed 2d 254 (1990), (codefendant's statement admissible where he "took full responsibility for his own part" in the crime); *United States v Layton,* 855 F2d 1388, 1405 (CA 9, 1988) (weighing of factors in determining if statement is reliable enough to satisfy Confrontation Clause); *United States v Garris,* 616 F2d 626, 630 (CA 2, 1980) (statement will satisfy requirement under rule 804(b)(3) that it "tended" to subject the declarant to criminal liability if it would be probative in a trial against the declarant).

As in *Earnest,* Dinoffria is currently unavailable because of the exercise of his Fifth Amendment privilege. Although Dinoffria claimed during the *Walker* hearing that Sgt. Gale had offered to assist him with another case, the trial court credited Sgt. Gale and documentary evidence that the police were not aware of a pending Oakland County case against Dinoffria until the next day. Thus, Dinoffria was not offered leniency, nor were promises made for his statement.

The record supports the trial court's finding that

Dinoffria's statement was voluntary. Dinoffria, an eighteen-year-old with a tenth-grade education, volunteered an inculpatory statement to his friend Briones at a time when he was not a suspect. His statement was not the product of threats or any form of negotiation. In addition, Dinoffria initialed each page of the written statement individually and wrote in his answers to the series of questions concerning the accuracy and voluntariness of the statement.

Dinoffria's statement strongly was against his penal interest. Dinoffria thoroughly inculpated himself in the murder and robbery of Toma and the arson of Toma's house. His statement shifted responsibility *away* from Petros. The statement minimized Petros' role and maximized Dinoffria's own participation in the offense. Although some of Dinoffria's assertions made Petros appear slightly more culpable than Dinoffria, Dinoffria forthrightly admitted that he actually shot Toma and sent Petros for more bullets to finish the job. In this respect, these facts contrast quite favorably with *Watkins.* Justices BRICKLEY and GRIFFIN were both concerned because the statements there minimized the confessor's involvement and maximized the defendant's.

An objective person could not do other than conclude that Dinoffria had thoroughly inculpated himself in premeditated murder, robbery, arson, and felony-firearm. He was "intimately involved" in the crime; see *United States v York, supra* at 1360; *State v Hammons,* 597 So 2d 990, 996 (La, 1992) (admission of having committed a crime is "especially appropriate" to determination of "against interest" status); *State v Hutcheson,* 62 Wash App 282, 290; 813 P2d 1283 (1991) (declarant's awareness of criminal nature of acts described renders statement reliable and justifies

hearsay exception). Although Dinoffria did some blame-shifting to Petros, see *Watkins, supra* at 662-664, by suggesting that Petros instigated the crime and supplied the weapon, no reasonable person could seriously contend that Dinoffria expected to "shift" the blame away from himself when he admitted firing at the victim three times, removing $200 from his pocket, and setting fire to the corpse. At best, Dinoffria's statement would "shift" enough blame that he and Petros would share responsibility for the crime. Dinoffria would be exposed to an equally severe penalty on the basis of his confession alone. "A reasonable declarant would recognize the disserving effect of a confession." *State v Kiewert,* 135 NH 338, 344; 605 A2d 1031 (1992).

Dinoffria's statement is also highly consistent in virtually all respects with Briones' report of Dinoffria's statements. See *McCafferty v Leapley,* 944 F2d 445, 451 (CA 8, 1991), cert den — US —; 112 S Ct 1277; 117 L Ed 2d 503 (1992) (child's hearsay statements "explicit and consistent" with other evidence). Whatever Dinoffria's motives in confessing to Briones, he was not required to repeat his inculpatory statements in response to police interrogations. "[S]peaking to acquaintances unconnected to law enforcement" makes a declarant's inculpatory statements "eminently trustworthy." *United States v York, supra* at 1362. See also *United States v Katsougrakis,* 715 F2d 769, 775 (CA 2, 1983), cert den 464 US 1040 (1984) (admitting "statement" made while declarant was "talking privately with his friend"); *State v Cook,* 135 NH 655; 610 A2d 800 (1992) ("spontaneity is an important factor in determining reliability under the Confrontation Clause). The totality of circumstances that surround the making of Dinoffria's statement must include the events immediately

preceding the interview with Sgt. Gale, that is, Dinoffria's prior statement to Briones.

The medical examiner's report of the cause of Toma's death corroborates Dinoffria's description of the shooting. The police found shell casings of a weapon of the same caliber as that used by Dinoffria. Briones brought the murder weapon to the police. As the court said in *United States v Garcia,* 897 F2d 1413, 1420 (CA 7, 1990), all that is required is "*some* corroborative evidence of the content of the hearsay statement." (emphasis in original). The corroboration sufficed to place the statement before a jury. As the Indiana Supreme Court said in *Thomas v State,* 580 NE2d 224, 227 (Ind, 1991):

> The Federal Rules of Evidence have been in use for over 16 years. Our research suggests that the rule considered here has been effective. . . . [T]he trial judge retains discretion to keep from the trier of fact those statements that do not actually present sufficient assurances that the statement was, in fact, made. *The trier of fact retains the traditional role of assessing the believability of each statement and deciphering the truth.* [Emphasis supplied.]

See also, e.g., *Garris, supra* at 633 ("It [remains] for the jury to pass judgment on [declarant's] credibility and the weight, if any, to be given to [her] statement . . . ."); *State v Sanchez,* 112 NM 59, —; 811 P2d 92, 98 (1991) (declarant's credibility is the province of the jury; admitting statement as substantive evidence against defendant).

As an additional and alternative ground for our decision, we observe that Dinoffria, although currently unavailable, testified at the *Walker* hearing after his January 11, 1991, statement. When a confessing codefendant has testified at an earlier

proceeding and is subject to cross-examination about the statement, the earlier opportunity to examine may well satisfy the Confrontation Clause because the witness, under oath, has been given an opportunity to explain or deny the prior statement. In this case, Dinoffria denied the statement in a manner highly favorable to Petros. Defendant's counsel accordingly had no need to test the witness with searching cross-examination. In our view, the Confrontation Clause has been satisfied. *California v Green, supra.*

In *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970), the United States Supreme Court set forth the mission of the Confrontation Clause in the hearsay exception context. Justice Stewart stated:

> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." [*Id.* at 89, citing *California v Green.*]

In these circumstances, the prior opportunities for cross-examination will furnish the trier of fact a satisfactory basis to evaluate the truth of the prior statement. *Mancusi v Stubbs,* 408 US 204; 92 S Ct 2308; 33 L Ed 2d 293 (1972). Dinoffria's prior statements at the initial preliminary examination and during the *Walker* hearing should be admitted to permit the trier of fact to find the truth.

We conclude that Dinoffria's January 11, 1991, statement to Sgt. Gale is sufficiently reliable to satisfy the Confrontation Clause.

Reversed and remanded for admission of the statement into evidence.