PEOPLE v ARMSTRONG

PEOPLE v RAGLIN

Docket Nos. 171306, 171307. Submitted September 7, 1994, at Lansing. Decided October 4, 1994, at 9:00 A.M.

Chad N. Armstrong and Lewis F. Raglin were bound over to the Oakland Circuit Court on felony charges arising out of an armed robbery of a convenience store. Each defendant moved to suppress as evidence the statement he had given to the police shortly after his arrest, each defendant claiming that his statement was involuntary because the police had failed to inform him before taking his statement that counsel had already been retained for him. Following a joint evidentiary hearing, the court, Barry L. Howard, J., relying on *People v Wright*, 441 Mich 140 (1992), determined that both of the statements were involuntary and suppressed their use as evidence. The prosecutor appealed by leave granted.

The Court of Appeals *held*:

The trial court's reliance on Justice MALLETT's opinion in *People v Wright* for the proposition that the failure to inform a defendant that counsel already has been retained renders involuntary any statement that is taken thereafter regardless of any other factors is misplaced, because that holding did not command the support of a majority of the Supreme Court. On remand, the trial court should consider the totality of the circumstances surrounding the taking of the statements in determining whether the statements were given involuntarily.

Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Richard H. Browne,* Acting Chief, Appellate Division, and *Mary M. Stiel,* Assistant Prosecuting Attorney, for the people.

*John A. Basch,* for Chad N. Armstrong.

*Randall P. Upshaw,* for Lewis F. Raglin.

Before: MURPHY, P.J., and HOOD and P. ED-
WARDS,* JJ.

PER CURIAM. The people appeal by leave granted
the trial court's orders suppressing the statement
of each defendant. Relying on *People v Wright,*
441 Mich 140; 490 NW2d 351 (1992), the trial court
determined that the statements were given invol-
untarily, because neither defendant was informed
before making his statement that counsel had
been retained to represent him. We reverse.

An armed robbery occurred at a Southfield con-
venience market during the afternoon of Septem-
ber 30, 1992. Defendants were arrested in Detroit
shortly after the incident; both were taken to the
Twelfth Precinct before being transferred to the
custody of the Southfield Police Department.

Upon learning of her son's arrest, defendant
Armstrong's mother contacted attorney Michael
Smith. Smith is defendant Armstrong's cousin.
Smith telephoned the Twelfth Precinct at 8:30 P.M.
on the date in question in an attempt to contact
Armstrong. An unidentified officer informed the
attorney that Armstrong was being processed and
thus was unavailable. Smith again telephoned the
Twelfth Precinct at 9:30 P.M., but was told that
Armstrong had been transferred to the Southfield
Police Station. In fact, Armstrong did not arrive at
the Southfield Police Station until 11:00 P.M.
Smith made several attempts to contact Arm-
strong by phone at the Southfield Police Depart-
ment, but was told each time that there was no
record of Armstrong being there. Smith's last call
to the Southfield Police Department on the date in
question was made at 11:30 P.M.

The officers responsible for interrogating Arm-

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

strong claimed that they were not aware that attorney Smith was attempting to contact Armstrong and that, therefore, Armstrong was not informed that counsel had been secured for him. At approximately 11:10 P.M., Armstrong signed a form setting forth his *Miranda*[1] rights and waiving his right to remain silent. He then gave the police a written confession. In answering question number seven on the waiver form ("Do you want to talk to a lawyer before answering any questions?"), Armstrong claims that he originally began to write down Smith's name, but crossed it out at the instruction of one of the detectives. An examination of the waiver form supports Armstrong's assertion. Likewise, regarding question number eight ("Will you waive your right to remain silent and answer any questions we may ask you?"), Armstrong claims that he originally began to write "no," but crossed it out and wrote "yes" at the urging of one of the detectives. Again, Armstrong's account is supported by a review of the waiver form.

Regarding defendant Raglin, the record reveals that his mother went to the Twelfth Precinct at approximately 5:30 P.M. on the date in question after learning that he had been arrested. Ms. Raglin was not allowed to speak with Raglin because, according to her, an officer stated that Raglin was being interviewed. Ms. Raglin claims that, before leaving the Twelfth Precinct, she told the police that she was "going to get an attorney." Ms. Raglin retained attorney Randall Upshaw on her son's behalf. Upshaw proceeded immediately to the Southfield Police Station, but claims that the desk attendant informed him that he would not be allowed to see or speak to Raglin. Raglin,

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

without being aware that an attorney was at the station, proceeded to waive his rights and make an incriminating statement. We note that Raglin claimed in the trial court that his requests for an attorney (while being fingerprinted) were ignored.

The trial court concluded that *Wright, supra,* mandated suppression of the statements. Therefore, we must decide whether the statements properly were suppressed as involuntary solely because defendants arguably were not informed before making their statements that attorneys had already been retained for them. Traditionally, a determination by a trial court concerning whether a statement is involuntary, and therefore inadmissible, is a determination made on the basis of the totality of the circumstances, and this Court reviews that determination under a clearly erroneous standard. *People v Brannon,* 194 Mich App 121, 131; 486 NW2d 83 (1992); *People v DeLisle,* 183 Mich App 713, 719; 455 NW2d 401 (1990).

However, in *Wright, supra* at 153, a case that involved facts similar to the present one, Justice MALLETT, joined by Justice LEVIN, concluded that defendant Wright did not make a voluntary and knowing waiver of his rights because the police had failed to inform him before he gave his statement that counsel had been retained for him and, further, that counsel was attempting to make contact with him. The two justices declined to consider other factors typically considered in a "totality of the circumstances" analysis. Instead, Justices MALLETT and LEVIN opined that the failure by the police department to so inform defendant Wright of retained counsel's presence and efforts rendered defendant's statement involuntary per se.

It is axiomatic that the Michigan Supreme Court must decide cases by concurrence of a majority of the justices voting. MCR 7.316(C). To create bind-

ing precedent, a majority must agree on a ground for decision. If a majority merely agrees with a particular result, then the parties are bound by the judgment, but the case provides no binding authority beyond the immediate parties. See *People v Petros,* 198 Mich App 401, 407; 499 NW2d 784 (1993). In *Wright,* though Chief Justice CAVANAGH deemed the reasoning and conclusion of Justices MALLETT and LEVIN as "supportable," he concurred in result only in a separate opinion. Chief Justice CAVANAGH was joined by Justice BRICKLEY. Justices BOYLE, GRIFFIN, and RILEY dissented. Thus, five of the seven Justices did not endorse the principle embraced by Justices MALLETT and LEVIN that, in effect, would create an exception per se to the traditional "totality of the circumstances" analysis.

Therefore, Justice MALLET's opinion in *Wright* is not binding precedent, because a majority of the justices did not support the rule of law set forth in that opinion. *Petros, supra.* Accordingly, the trial court was not "confined" to analyzing the question of voluntariness in the manner that it did. Instead, the trial court should have analyzed the issue of voluntariness in light of the "totality of the circumstances." Because the trial court did not do this, we find that its decision to suppress the statements was clearly erroneous. *Brannon, supra; DeLisle, supra.* By so holding, we do not suggest that on remand the trial court is precluded from taking into account the fact that the defendants were not advised by the police that attorneys had been retained for them. To the contrary, we believe that this factor can be appropriately considered along with the other circumstances presented in this case.

The trial court's decision to suppress the statements is reversed, and the cases are remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.