*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PIONEER STATE MUTUAL INSURANCE
COMPANY,

        Plaintiff-Appellant,

and

OAK PARK IMAGING,

        Plaintiff,

v

VANETTA WRIGHT, DANA REYNARD
HARRIS, and STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,

        Defendant-Appellees,

and

MENDELSON ORTHOPEDICS, PC, and
SYNERGY SPINE AND ORTHOPEDIC
SURGERY CENTER, LLC,

        Intervening Defendants-Appellees.

FOR PUBLICATION
February 11, 2020
9:05 a.m.

No. 347072
Macomb Circuit Court
LC No. 2015-002978-CZ

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

K. F. KELLY.

       Plaintiff Pioneer State Mutual Insurance Company (Pioneer) appeals as of right the trial court's order denying its motion for summary disposition and granting the motions for summary disposition of Vanetta Wright (Wright), Dana Reynard Harris (Harris), State Farm Mutual Automobile Insurance Company (State Farm), Mendelson Orthopedics, PC (Mendelson), and Synergy Spine and Orthopedic Surgery Center, LLC (Synergy) (collectively, defendants). We affirm.

# I. BASIC FACTS AND PROCEDURAL HISTORY[1]

In April 2013, Wright lived in an apartment in Warren and submitted an automotive insurance application to Pioneer. At the time of her submission, Wright did not identify Harris, her adult son, as a driver or resident in her household. On September 13, 2013, Harris was injured in a motor vehicle accident while travelling as a passenger in a vehicle owned by Laurie Francen. Francen's car was covered by a policy of insurance issued by State Farm. Harris did not own a vehicle or carry no-fault insurance at the time of the accident. Therefore, he pursued a claim for personal protection insurance (PIP) benefits from Pioneer through the policy issued to Wright. *Harris v Booker*, unpublished per curiam opinion of the Court of Appeals, issued December 14, 2017 (Docket Nos. 332764 and 335025), pp 2, 5.

Unable to obtain PIP benefits from Pioneer, on May 20, 2014, Harris filed suit against Pioneer and the driver of the other vehicle involved in the accident. In March, 2015, Harris amended his complaint to include State Farm as a defendant. State Farm pursued a cross-claim against Pioneer, claiming that Pioneer was the first in priority insurer required to pay Harris's PIP benefits pursuant to the no-fault act, MCL 500.3101 *et seq*., because Harris was a resident relative in the home of Wright at the time of the accident. However, in August 2015, Pioneer filed a separate action for declaratory relief, requesting rescission of the insurance policy issued to Wright. It claimed that the failure to name Harris as a household resident in the application for insurance constituted a material misrepresentation that warranted rescission of the policy. *Id*., unpub op at 3.

In the original first-party action, both State Farm and Harris filed motions for summary disposition. State Farm moved for summary disposition of Harris's complaint as well as its cross-claim against Pioneer, contending that Harris resided with Wright, his mother, and as a resident relative, Pioneer was responsible for paying PIP benefits. Harris concurred in the dispositive motion filed by State Farm, agreeing that Pioneer was the highest priority payer and filed his own motion, submitting that judgment should enter in his favor against Pioneer under the circumstances. Pioneer opposed the dispositive motions, asserting that there was a factual issue regarding Harris's residence at the time of the accident. Further, it contended that even if Harris were deemed a domiciled relative, the policy was voidable in light of Wright's failure to disclose that he shared her home on her application for insurance. The trial court held that the underlying facts were not in dispute and that Harris resided in his mother's guest room where he kept his personal belongings and he did not have another place of lodging at the time. Because Pioneer was the highest priority payer, the trial court granted State Farm's motion. The trial court also concluded that plaintiff was an innocent third-party entitled to benefits because there was no evidence that he knew of misrepresentations by Wright on the application for insurance. Therefore, Pioneer did not have the right to rescind the insurance policy. With regard to Pioneer's declaratory action for rescission, the trial court summarily dismissed the complaint on the basis of laches.

---

[1] This no-fault case returns to this Court following a remand to the trial court. *Harris v Booker*, unpublished per curiam opinion of the Court of Appeals, issued December 14, 2017 (Docket Nos. 332764 and 335025).

When the trial court ruled on the summary disposition motions, the innocent third-party rule prohibited "an insurer from rescinding an insurance policy because of a material misrepresentation made in an application for no-fault insurance where there is a claim involving an innocent third party." *Sisk-Rathburn v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 425, 430; 760 NW2d 878 (2008). However, in *Bazzi v Sentinel Ins Co*, 315 Mich App 763, 770; 891 NW2d 13 (2016) (*Bazzi I*), aff'd in part and rev'd in part 502 Mich 390 (2018), we subsequently held that the innocent-third party rule did not apply to a claim for PIP benefits, and therefore, insurers were entitled to rescind an insurance policy on the basis of fraud and were not obligated to pay PIP benefits to an innocent third party.

Accordingly, the state of the law changed after the trial court's summary disposition rulings, but prior to appellate disposition. After review of the lower court decisions, this Court affirmed the "determination that Harris was a resident relative domiciled with Wright," but reversed the trial court's order applying the innocent third-party rule to Harris and remanded for further proceedings. *Harris*, unpub op at 2, 7.[2] This Court reasoned that the trial court's rationale for applying the innocent third-party rule was expressly rejected by *Bazzi I*. *Id*. at 7.

Further, we reversed the trial court's decision to apply the doctrine of laches to Pioneer's action for declaratory relief, and remanded to the trial court to determine whether Pioneer could rescind Wright's insurance policy. *Id*. at 2-3, 9.[3] This Court held that the trial court improperly applied the doctrine of laches to grant defendants' summary disposition. *Id*. at 8. Although there was little doubt that Pioneer waited two years to file a declaratory judgment action seeking rescission, this Court concluded that Pioneer's delay was neither unreasonable nor unjustified because *Bazzi I* was decided during the pendency of the lower court proceedings and gave Pioneer cause to seek rescission of the policy. *Id*.

After our decision and remand to the trial court, the Michigan Supreme Court decided *Bazzi v Sentinel Ins Co*, 502 Mich 390, 407-410; 919 NW2d 20 (2018) (*Bazzi II*), which held that, while an individual's claim as an innocent third party does not preclude an insurer from seeking rescission for fraud, the existence of fraud does not give the insurer an absolute right to rescission. *Bazzi II* instructs trial courts to "balance the equities" when determining whether an insurer may rescind an insurance policy. *Id*. at 410.

On remand from this Court and in light of *Bazzi II*, the trial court ordered the parties to file motions for summary disposition. Following the receipt of briefs and oral argument, the trial court granted defendants' motions for summary disposition and denied Pioneer's motion for summary disposition. The trial court first concluded "that the requirements of laches are different than balancing of the equities of the case," and that laches only applies when another party suffers prejudice because of an unreasonable delay. The trial court determined that all of the parties, except for Wright, were innocent. Harris was an innocent party because there was no evidence that he participated in Wright's misrepresentation. Pioneer constituted an innocent party because it had no obligation to investigate Wright's representations in her insurance application. Because all of the parties, except for Wright,

---

[2] This ruling was the subject of the appeal in Docket No. 332764.

[3] This ruling was the subject of the appeal in Docket No. 335025.

were innocent, the trial court concluded that the resolution of the case required a balancing of the equities. Next, the trial court held that it would be inequitable to permit Pioneer to rescind Wright's insurance policy because, although Pioneer's delay was "reasonable," it waited two years to file its declaratory action and to permit rescission would preclude Harris from recovering most of his claim for no-fault benefits from any other insurer because of the application of the one-year-back rule. From this ruling, Pioneer appeals.

## II. STANDARD OF REVIEW

The appellate court reviews a trial court's decision on a motion for summary disposition de novo. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). The trial court did not specify whether its decision was premised on MCR 2.116(C)(8) or (10). This Court must treat plaintiff's motion as having been decided under MCR 2.116(C)(10) to the extent the trial court considered evidence beyond the pleadings. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 544; 904 NW2d 192 (2017). "[A] motion under MCR 2.116(C)(10) . . . tests the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). When considering a motion brought pursuant to MCR 2.116(C)(10), the trial court must review the evidence in the light most favorable to the nonmoving party. *Id*. Summary disposition is only appropriate when there is no genuine issue of material fact. *Id*. A genuine issue of material fact exists when the record presents an issue upon which reasonable minds might differ. *Id*.

The remedy of rescission is "granted only in the sound discretion of the court." *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 26; 331 NW2d 203 (1982); see also *Bazzi*, 502 Mich at 409. An abuse of discretion occurs when the decision falls outside the range of reasonable and principled outcomes. *Berryman v Mackey*, 327 Mich App 711, 717; 935 NW2d 94 (2019). An abuse of discretion necessarily occurs when the trial court makes an error of law. *Id*. The trial court's factual findings are reviewed for clear error, and a finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*.

## III. LAW OF THE CASE

Pioneer argues that the trial court erred in denying its motion for summary disposition and granting defendants' motion for summary disposition because it violated the law of the case doctrine. Pioneer asserts that the trial court's conclusion, that rescission was inequitable, essentially constitutes an application of the doctrine of laches to balance the equities, a decision that directly contradicts this Court's prior ruling that laches was inapplicable. *Harris*, unpub op at 2. We disagree.

The issue of whether the law of the case doctrine applies is a question of law that this Court reviews de novo. *Duncan v Michigan*, 300 Mich App 176, 188; 832 NW2d 761 (2013). Whether the lower court properly "followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

Generally, the ruling of a higher court on an issue in a case will bind the lower court on remand and the appellate court in any subsequent appeals. *Schumacher*, 275 Mich App at 127. This principle, known as the law of the case doctrine, provides:

> If an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same. The appellate court's decision likewise binds lower tribunals because the tribunal may not take action on remand that is inconsistent with the judgment of the appellate court. Thus, as a general rule, an appellate court's determination of an issue in a case binds lower tribunals on remand and the appellate court in subsequent appeals. [*Grievance Administrator v Lopatin*, 462 Mich 235, 259; 612 NW2d 120 (2000) (citations and quotation marks omitted).]

The doctrine is based on "the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing." *South Macomb Disposal Auth v American Ins Co*, 243 Mich App 647, 654-655; 625 NW2d 40 (2000). Trial courts are bound by the doctrine unless there has been a material change in the facts or an intervening change in the law. *Duncan*, 300 Mich App at 189. A trial court violates the law of the case doctrine when it revisits a legal issue already ruled on by this Court. *Schumacher*, 275 Mich App at 128.

In *Harris*, this Court held that the trial court erred when it applied the doctrine of laches to Pioneer's declaratory judgment action seeking rescission of Wright's insurance policy. *Harris*, unpub op at 7. When this Court decided *Harris*, and remanded to the trial court, *Bazzi I*, was the applicable law. *Bazzi I* held that "if an insurer is able to establish that a no-fault policy was obtained through fraud, it is entitled to declare the policy void *ab initio* and rescind it, including denying the payment of PIP benefits to innocent third parties." *Id*. at 781-782. Shortly after this Court remanded to the trial court, *Bazzi II* was decided.[4] *Bazzi II* declared that an individual's claim for no-fault benefits as an innocent third party does not preclude an insurer from seeking rescission for fraud, but that fraud did not give an insurer an absolute right to rescission. *Bazzi II*, 502 Mich at 407-408. *Bazzi II* clarified that, "when two equally innocent parties are affected," the trial court "must balance the equities to determine whether" the insurer is entitled to rescind an insurance policy. *Id*. at 410.

Here, the trial court adhered to our Supreme Court's instruction in *Bazzi II* to balance the equities. Contrary to Pioneer's assertions, the trial court did not apply laches; rather, it balanced the equities as required by *Bazzi II*. Although laches and rescission are both equitable remedies, they are not one in the same. As the trial court properly noted, laches requires prejudice to the defendant that results from the plaintiff's unreasonable delay. See *Twp of Yankee Springs v Fox*, 264 Mich App 604, 611-612; 692 NW2d 728 (2004) (noting that "[t]he doctrine of laches is concerned with unreasonable delay that" would make it inequitable to allow a plaintiff to enforce a claim against a defendant). The trial court explicitly recognized that laches was inapplicable and that it was obligated to determine whether rescission was equitable by balancing the parties' equities.

Pioneer argues that the trial court violated the law of the case doctrine because, on remand, it used the same analysis as it did when it applied laches. Indeed, the trial court considered nearly all of

---

[4] *Bazzi II* was decided on July 12, 2018, approximately six months after this Court decided Docket No. 335025.

the same facts to balance the equities on remand that it did when it applied the doctrine of laches. Specifically, it considered the fact that Pioneer waited over two years to file a declaratory judgment action for rescission even though it knew that Harris resided with Wright and that it could potentially rescind Wright's insurance policy. The trial court also considered that Harris was prejudiced by Pioneer's delay because the one-year-back rule, MCL 500.3145, now precludes Harris from recovering a majority of his claim for PIP benefits from any other insurer since Harris's losses occurred more than one year after he added State Farm as a defendant. However, this factual analysis conducted by the trial court did not contradict this Court's ruling in *Harris*. This Court did not absolve Pioneer of any delay; it only concluded that Pioneer's delay was not unreasonable. *Harris*, unpub op at 8. This Court also acknowledged that Harris was "likely prejudiced" by Pioneer's delay. *Id*. The fact that the trial court considered the same factors to balance the equities does not indicate that the trial court applied the doctrine of laches. The trial court simply concluded that both Pioneer and Harris are innocent parties, but a balancing of the equities demonstrated that rescission would be inequitable and that Pioneer should bear the loss.

In summary, the trial court's analysis was consistent with this Court's ruling in *Harris* because it did not find Pioneer's delay to be unreasonable or unjustified; the court merely considered the delay in resolving the case. In fact, the court stated that, "despite the reasonableness" of Pioneer's delay, the equities favored Harris. Accordingly, the trial court did not violate the law of the case doctrine.

## IV. BALANCING THE EQUITIES

Pioneer next argues that the trial court erred when it denied its motion for summary disposition because, when the trial court balanced the equities as required by *Bazzi II*, it essentially applied the doctrine of laches and failed to consider other relevant factors. We disagree.

There is no dispute that Harris and Pioneer are innocent parties to Wright's representations and omissions on the insurance application. Because both Pioneer and Harris are innocent parties, *Bazzi II*, 502 Mich at 410-411, required the trial court to balance the equities to determine whether the equitable remedy of rescission was appropriate. "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi II*, 502 Mich at 409. *Bazzi II* clarified that, while the innocent third-party rule no longer bars insurers from seeking rescission, insurers are not "categorically entitled to rescission." *Id*. at 408. Rescission is equitable in nature, and therefore, the remedy is granted only within the trial court's discretion. *Id*. Our Supreme Court explained:

> [W]hen two equally innocent parties are affected, the court is required, in the exercise of its equitable powers, to determine which blameless party should assume the loss. Where one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong. The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked. [*Id*. at 410-411 (citations and quotation marks omitted).]

*Bazzi II* did not provide trial courts with a clear-cut framework for balancing the equities because "an absolute approach would unduly hamper and constrain the proper functioning of" an equitable remedy. *Id*. at 411. "Equitable remedies are adaptive to the circumstances of each case." *Id*.

Here, the trial court considered Pioneer's delay in filing its action for declaratory relief seeking rescission. While the trial court expressly recognized the reasonableness of Pioneer's delay, it did note that, as early as October 13, 2013, Pioneer knew that Harris resided with Wright and that it could potentially rescind Wright's policy. The trial court also recognized that, if rescission were permitted, the one-year-back rule would bar Harris from recovering a majority of his claim for PIP benefits. In light of these facts, the trial court concluded that it would be inequitable for Pioneer to rescind Wright's insurance policy.

Although the *Bazzi II* Court concluded that the application of equitable remedies in the context of rescission was contingent on the circumstances of each case, Justice MARKMAN recently articulated factors applicable to balance the equities. *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903 (2018) (MARKMAN, J., concurring).[5] Justice MARKMAN described a "nonexclusive list of factors" the trial court should consider when resolving the issue of rescission. Reduced to their essence, five factors were identified and they address: (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. *Id.* at 906-907 (MARKMAN, C.J., concurring). We conclude that the factors outlined in Justice MARKMAN's concurrence to render a determination regarding the balance of the equities presents a workable framework as well as necessary guidance to the lower courts and the litigants, and therefore we adopt it as our own.

The trial court did not have the benefit of Justice MARKMAN's concurrence at the time it rendered its decision.[6] Nonetheless, the trial court's analysis appears to be consistent with Justice MARKMAN's framework. The first factor, the extent to which Pioneer could have discovered Wright's representations before the accident,[7] does not truly weigh in either party's favor. There is no evidence to

---

[5] We recognize that Justice Markman's concurrence is not binding on this Court because it is a concurrence to a Michigan Supreme Court Order, but it is instructive. See *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001) ("An order that is a final Supreme Court disposition of an application and that contains a concise statement of the applicable facts and reasons for the decision is binding precedent."); see also *People v Armstrong*, 207 Mich App 211, 214-215; 523 NW2d 878 (1994) ("To create binding precedent, a majority must agree on a ground for decision.).

[6] The *Farm Bureau Gen Ins Co of Mich* order issued on November 21, 2018, approximately two months after the trial court's decision after remand.

[7] In *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), our Supreme Court held that "an insurer may seek to avoid liability under an insurance policy using traditional legal and equitable remedies including cancellation, rescission, or reformation, on the ground of fraud made in an application for insurance, notwithstanding that the fraud may have been easily ascertainable and the claimant is a third-party." The first factor does not impose a duty to investigate upon insurers, contrary

suggest that there could or could not have been a more diligent effort on Pioneer's part to discover contradictions or omissions in Wright's application any earlier. The second factor, the innocent third party's potential knowledge of the fraud, weighs against rescission because there is no evidence that Harris was ever aware of Wright's representations. Pioneer concedes that Harris was unaware of Wright's representations. The third factor—the innocent third party's conduct in the event that caused the injury—also weighs against rescission because Harris was simply a passenger in Francen's car and was not involved in the operation of the vehicle. The fourth factor—whether the innocent third party has an alternate avenue for recovery—also weighs against rescission. As noted by the trial court, if rescission were permitted, the one-year-back rule would bar Harris from recovering a majority of his claim for PIP benefits. Pioneer argues that the trial court incorrectly balanced the equities because it did not consider the fact that Harris failed to file a timely claim against State Farm. According to Pioneer, Harris had an alternate means of recovery, but failed to timely add State Farm and the Michigan Assigned Claims Plan.

The accident at issue in this case occurred on September 13, 2013. When Harris filed his complaint against Pioneer on May 20, 2014, he sought PIP benefits only from Pioneer. One year later, Harris filed an amended complaint to add State Farm as a named defendant. As a result of Harris's delay in adding State Farm as a defendant, the one-year-back rule barred most of the PIP benefits that Harris could recover from State Farm because Harris received medical care more than one year before he amended his complaint to add State Farm as a defendant.

Pioneer's argument fails to recognize that, because Harris was a resident relative domiciled with Wright at the time of the accident, Pioneer is the insurer of highest priority under MCL 500.3114(1).[8] While it may have been prudent of Harris to name Pioneer, State Farm, and the Michigan Assigned Claims Plan as defendants when he initially filed his complaint, it is apparent why Harris failed to do so. Pioneer's primary reason for denying Harris's claim for PIP benefits was based on Harris's residency. Presumably, Harris believed that he had a viable claim against Pioneer and would successfully recover PIP benefits. Regardless, the fourth factor considers the present situation, not whether an injured party could have done something different to have more options in the future. *Farm Bureau Gen Ins Co of Mich*, 503 Mich at ___; slip op at 5 (MARKMAN, J., concurring), citing *Belcher v Aetna Cas & Surety Co*, 409 Mich 231, 251, 293 NW2d 594 (1980) ("[B]efore recovery of benefits may be obtained through an assigned claims plan, it must be determined that no personal protection insurance is 'applicable to the injury.' "). As discussed, the one-year-back rule precludes Harris from recovering most of his PIP benefits from any other insurer because his losses occurred more than one year before he added State Farm as a defendant and Harris did not name any other insurer as a defendant, and therefore, does not have an alternative avenue for recovery.

Finally, the fifth factor—whether enforcing "the insurance policy would subject the insurer to coverage for tort liability for an at-fault insured"—does not appear to be applicable because the only

---

to *Titan Ins Co*, but merely addresses the process of procurement of insurance and any information disclosed.

[8] In Docket No. 332764, we held that the trial court properly determined that Harris was a resident relative of Wright, and therefore, plaintiff was the insurer of highest priority. *Harris*, unpub op at 4, 6.

apparent wrongdoer in this case was Wright. This factor is inapplicable because Wright was not involved in the accident at issue and Harris was not the "fraudulent insured" or driver.

Balancing the equities is not concerned with laying blame, but determining which of the innocent parties should bear a loss. *Bazzi II*, 502 Mich at 411. The resolution of the issue does not require this Court to litigate the propriety of Pioneer's delayed conduct, particularly where this Court previously addressed it. The trial court properly determined that rescission would be inequitable because Pioneer filed a declaratory judgment action seeking rescission nearly two years after it learned of Wright's insurance representations and rescission would preclude Harris from recovering most of his PIP claim from any other insurer. *Farm Bureau Gen Ins Co of Mich*, 503 Mich at ___; slip op at 4-5 (MARKMAN, J., concurring). The trial court's analysis was specific to the facts and circumstances of the case and went no farther than what was equitable. Therefore, we cannot conclude that the trial court abused its discretion by refusing to grant rescission. *Lenawee Co Bd of Health*, 417 Mich at 26. Moreover, the factors applied weigh against rescission. Accordingly, the trial court properly denied Pioneer's motion for summary disposition and granted defendants' motions for summary disposition.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto