PEOPLE v IVERS

Docket No. 111177. Argued December 10, 1998 (Calendar No. 14). Decided December 28, 1998.

Michael P. Ivers was convicted by a jury in the Ingham Circuit Court, Peter D. Houk, J., of third-degree criminal sexual conduct. The Court of Appeals, MICHAEL J. KELLY, P.J., and REILLY, J. (JANSEN, J., dissenting), reversed in an unpublished opinion per curiam, finding that the trial court erred in prohibiting testimony about statements made by the complainant to a friend earlier in the day of the alleged rape (Docket No. 195321). The people appeal.

In an opinion by Justice CAVANAGH, joined by Chief Justice MALLETT, and Justices BRICKLEY and TAYLOR, the Supreme Court *held*:

The proposed testimony was not excludable under the rape-shield statute, MCL 750.520j; MSA 28.788(10), and was otherwise relevant.

The rape-shield statute acts as a bar to testimony regarding sexual subjects involving the complainant unless such testimony falls outside the scope of the statute. The statute precludes admission of specified categories of evidence: evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct. The evidence that the defense sought to introduce did not fall into any of those categories. Further, the proposed testimony was relevant because it had a tendency to make the existence of consent more probable than it would be without the evidence, and there was no significant danger of unfair prejudice.

Justice BOYLE, joined by Justices WEAVER and KELLY, concurring, stated that the statements do not come within the general prohibition on character evidence under MRE 404(a). On remand, and after proper objection, the trial court should make a factual determination regarding whether there is a sufficient nexus between the complainant's out-of-court statement of future intent and the act at issue. The statements fall within the purview of the general ban on hearsay evidence because they are extrajudicial statements offered for the truth of the matter asserted. Under 803(3), a statement of future intent is admissible to show action in conformity with the stated intent. Where the intention to be proved is only circumstantially relevant to prove the act at issue, there must be a nexus

between the statement and the act. In making the determination of preliminary fact under 104(a), the trial court must consider the contemporaneity between the statement and the act, the opportunity for later reflection, and the relevance of the statements in ascertaining whether there is a sufficientnexus.

Affirmed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Stuart J. Dunnings, III*, Prosecuting Attorney, and *Samuel R. Smith*, Chief, Appellate Division, for the people.

State Appellate Defender (by *Fred E. Bell*) for the defendant-appellee.

Amicus Curiae:

*Elwood Brown*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

CAVANAGH, J. The defendant was convicted of third-degree criminal sexual conduct.[1] However, the Court of Appeals reversed, finding that the trial court erred in prohibiting testimony about statements made by the complainant to a friend earlier in the day of the alleged rape. We agree with the Court of Appeals that the proposed testimony was not excludable under the rape-shield statute, MCL 750.520j; MSA 28.788(10), and was otherwise relevant.

I

It is undisputed that the defendant engaged in sexual penetration with complainant Allison Campbell at

---

[1] MCL 750.520d(1)(b); MSA 28.788(4)(1)(b).

the defendant's apartment on the Michigan State University campus in the early morning hours of August 24, 1994. The issue at trial was whether the complainant consented.

The complainant testified that on the day in question she was visiting Michigan State University to determine whether she would attend college there. She visited a high school friend, Mary Rachel Stevens, at Stevens' dormitory room, where she later met the defendant, an acquaintance of Ms. Stevens. They and another person went to defendant's apartment, where beer was consumed, and later were part of a group that went to a party at another location, where the complainant consumed additional alcohol. Defendant, complainant, Ms. Stevens, and another friend left the party. The complainant testified that she could not remember anything between the time that she was walking toward the defendant's apartment until she became conscious of the fact that the defendant was on top of her with his penis in her vagina, at which point she told him to stop and cried.

The prosecution's theory was that the defendant raped the complainant and caused personal injury to her and knew or had reason to know that she was physically incapacitated due to the consumption of alcohol. Defendant was charged with first-degree criminal sexual conduct.[2]

As noted, the defense was consent. The defendant testified that he and Ms. Campbell had kissed several times as they walked from the party to his apartment. When they reached the apartment, they continued kissing as they sat in a chair. He asked her if she

---

[2] MCL 750.520b(1)(g); MSA 28.788(2)(1)(g).

wanted to go to the bedroom, to which she replied, "Yes." He testified that they each removed their clothes and got on the bed and had intercourse. At that time the complainant appeared to be laughing. Defendant asked, "What's so funny?" and realized that she was crying.

While there was some evidence to corroborate both defendant's and complainant's versions of the events, their testimony was the critical evidence on the central issue of consent.

II

The issue presently before us concerns the defense efforts to introduce testimony from Ms. Stevens about statements made by complainant. At the preliminary examination, Stevens had testified about a conversation she had with the complainant before they went out that night:

> *Q.* Okay. All right. Before you and Allison went out that night, did you have a conversation with her regarding having sex?
>
> *A.* Yes.
>
> *Q.* Please tell us what she said and what you said?
>
> *Mr. Adams* [*prosecutor*]: Objection on hearsay and rape shield. Unless it has to do with sex with the Defendant.
>
> *The Court*: I'll take the answer then I'll just disregard it if [it] doesn't fall within the . . .
>
> *The Witness*: We had talked about having sex and she had told me that she had talked to her mom about being on the pill and that she knew she was going to college and that

she—that she was ready to have sex and she knew that it would probably happen her freshman year at college.[3]

At trial, the prosecutor moved in limine to exclude the testimony of the conversation between complainant and Ms. Stevens. The circuit judge made a record of the testimony, eliciting comparable testimony from Ms. Stevens.[4] The trial judge ruled that the testimony would not be allowed under the rape-shield statute:

I believe it's absolutely irrelevant and immaterial whether a young woman says that she's ready to have sex or not in the context of the conversation that has been reported to this Court. It means no more than a similar statement or similar action by a young man who may have purchased and carries with him a condom. This type of testimony is absolutely inadmissible under [MCL] 750.520j [MSA 28.788(10)], which limits admissibility to prior sexual conduct in instances where there has been a prior relationship between the accused and the alleged victim. If this is brought forth as an issue of credibility, it is more prejudicial than it is probative since there are several other conflicts in the testimony of Miss Campbell and other witnesses of which this Court is already aware.

For example, the question of how she came to have bruises on her legs and arms and her neck, where I believe one of the witnesses will testify that he fell on her; and whether or not she was unconscious in bed.

For those reasons, the People's motion in limine to prohibit the testimony both of Mary Rachel Stevens on this topic and the alleged victim is prohibited. Excuse me, the testimony is prohibited. The motion is granted.

---

[3] Later, the prosecutor withdrew objection to consideration of the testimony for the purpose of the preliminary examination only.

[4] The prosecution called complainant Campbell at the hearing, and she denied ever having had a conversation with Ms. Stevens about sex.

Thereafter, defense counsel made reference to Ms. Stevens' testimony that the complainant had asked her to "get her a guy" that night, and requested to be able to ask about that. The prosecutor said that no such testimony had yet been elicited,[5] but that if it were forthcoming the same objection would be made, and that the complainant would deny having made such a request. Defense counsel argued that the testimony would not be covered under the rape-shield statute, but the prosecutor disagreed, and the trial judge excluded the evidence:

*Ms. Vander Voord [prosecutor]*: The term "get me a guy" to most people means get me a guy for something other than just hello, how are you, Your Honor. The inference to the jury is certainly that "get me a guy" means get me a guy to have sex with, and I think that's a common, everyday connotation of those words. If I asked Your Honor to get me a guy, I would expect that you'd know what I mean. I don't mean, gee, Judge, I want to have a nice conversation with one of your male friends.

I think it's the wrong connotation to present for this jury. Number one, it would be covered under the same rape-shield law and, number two, the victim denies ever asking Mary Rachel to, quote, "get her a guy."

*The Court*: I'm going to prohibit this as well. On cross-examination the Prosecutor asked Mary Rachel Stevens whether there was any other conversation about sex that night. Mary Rachel Stevens says there was not. I disagree with the Prosecutor. I don't think saying "get me a guy" nec-

---

[5] Ms. Stevens had not been asked about this at the hearing during trial. However, at the preliminary examination she had testified:

*Q.* Can you recall the exact—what you said to her and what she said to you?

*A.* There was me, Bryan, Allison, were [sic] all standing together, and me and Bryan were kind of standing next to each other, and she had said that she wanted us to find her a guy.

essarily means I want sex, or go get me some guy so I can have a sexual liaison tonight. I think it can be equally interpreted that I don't want to be the fifth wheel if we're going out tonight. I don't want to be the only person there without a date. So, I will grant the motion.

At the conclusion of the trial the jury found the defendant guilty of the lesser offense of third-degree criminal sexual conduct. The judge sentenced the defendant to two to fifteen years in prison.

III

On appeal, the Court of Appeals reversed on the basis of the exclusion of Ms. Stevens' testimony.[6] The majority found the rape-shield statute[7] inapplicable:

The proffered testimony did not concern the complainant's past sexual conduct, opinions about her sexual conduct or her reputation regarding sexual conduct. Accordingly, it was not precluded by the rape-shield statute. It concerned statements made by the complainant to her friend showing that she had discussed birth control with her mother in anticipation of going away to college, that she believed that she was "ready" for sex, and that she asked her friend to "find her a guy." [Slip op at 2.]

---

[6] Unpublished opinion per curiam, issued December 2, 1997 (Docket No. 195321).

[7] MCL 750.520j; MSA 28.788(10) provides:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor.

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

The Court of Appeals found the evidence relevant, even though it was somewhat removed in time from the alleged assault:

> Although the statements in this case were somewhat removed from defendant's alleged act of sexual aggression, we conclude that the statements were "incident" to the alleged sexual conduct because they were made on the evening of the alleged assault and evidenced a state of mind that the complainant *may* have been contemplating having sex that evening. See [*People v Adair*, 452 Mich 473, 481; 550 NW2d 505 (1996).] We note that these statements are by no means proof that the complainant was "ready" for sex on the night in question or that "getting a guy" meant that she wanted to have sex that night. However, the testimony was relevant in that it had a tendency to make the existence of a fact which was of consequence, i.e., consent, more probable than it would have been without the evidence. MRE 401. [*Id.*][8]

IV

The prosecutor would have us believe that the Court of Appeals erred in distinguishing between "conduct" and "statements" in analyzing the proposed testimony under the rape-shield statute. In a prosecutor's view, "speaking," "discussing," and "conversing" are all forms of conduct. The case law is replete with examples of "conduct" that have verbal aspects. Further, the prosecutor urges that the policies underlying the rape-shield statute are applicable to the kinds of statements in question here. Conversations with sex-

---

[8] In her dissenting opinion, Court of Appeals Judge KATHLEEN JANSEN agreed that the rape-shield statute did not apply, but found the statements irrelevant because they did not relate to whether the complainant consented to having sex with the defendant. She argued that such generalized and indefinite statements do not prove a state of mind.

ual content carry an equal danger of prejudicing or misleading the jury as testimony about sexual conduct. Similarly, the prosecutor suggests that "the deterrent to reporting sexual assaults or testifying caused by the embarrassment inherent in having one's conversations about private matters bared to a jury of strangers is little less than having one's actions exposed."

We disagree. The Court of Appeals was clearly correct to find the proposed testimony outside the scope of the rape-shield statute. As we said in *People v Adair, supra* at 480-481:

The rape-shield statute was aimed at thwarting the then-existing practice of impeaching the complainant's testimony with evidence of the complainant's prior consensual sexual activity, which discouraged victims from testifying "because they kn[e]w their private lives [would] be cross-examined." House Legislative Analysis, SB 1207, July 18, 1974.

The proposed testimony by Ms. Stevens does not reveal any prior sexual activity by the complainant. The rape-shield statute acts as a bar to testimony regarding sexual subjects involving the complainant, unless such testimony falls outside the scope of the statute. The statute precludes admission of specified categories of evidence: "evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct . . . ." The evidence that the defense sought to introduce did not fall in any of those categories. See *People v Hackett,* 421 Mich 338, 356; 365 NW2d 120 (1984).

This is not to say, however, that no "statement" would ever be precluded under the rape-shield stat-

ute. For example, hypothetically, had the complainant's statement referenced particular acts, i.e., "I'm ready to have sex at college since I had sex with x after our high school graduation party," that would clearly seem to be inadmissable as evidence of "specific instances of the victim's sexual conduct," despite having some bearing on the victim's present mental state.[9] Likewise, "statements" or references to "statements" made in the course of what is referred to in common parlance as "phone sex" themselves would seem to amount to a prior instance of sexual conduct, and thus be precluded. The important distinction, however, is not so much "statements" versus "conduct" as whether the statements do or do not *amount* to or *reference* specific conduct. Here it is plain that they do neither, and, thus, evidence of the statements would not be barred by rape-shield concerns.

The remaining question is whether the evidence was relevant to the issue of consent. The prosecutor argues that the proposed evidence did not compel a finding that the complainant consented to sex with the defendant on the night in question, suggesting explanations for the statements that could lead a factfinder to reject that conclusion. However, those arguments are misdirected. They are the sort of arguments that one would make to a jury in the face of introduction of such evidence. The arguments do not go to the relevance of the evidence, which is controlled by MRE 401:

---

[9] It might be that such a statement could be offered if the offending portion, that which referenced a specific event, was redacted. That is not the case before us, however, and thus we leave the question for another day.

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

The proposed testimony by Stevens has a tendency to make the existence of consent more probable than it would be without the evidence.

The prosecutor also briefly argues that the evidence should have been excluded under MRE 403 because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. However, the prosecutor's argument makes virtually no effort to show that there was significant danger of unfair prejudice in this case. The prosecutor criticizes the Court of Appeals for selectively mentioning portions of the discussion in the dormitory room and ignoring others. In the prosecutor's view, this approach by the Court of Appeals majority exemplifies a tendency to take statements with sexual conduct or overtones out of context and use them to imply consent or lack of moral character on the part of the victim.

The jury, however, would not have been presented with these statements out of context, but would rather have heard Ms. Stevens' entire report of the conversations, which would have been subject to cross-examination. The prosecutor could have presented to the jury the explanations made in this Court about why the statements allegedly made by the complainant do not support the defense of consent. Further, on their face, there is nothing particularly inflammatory about the complainant's statements as reported by Ms. Stevens.

Because the trial court improperly excluded the testimony of witness Stevens under the rape-shield statute, we affirm the judgment of the Court of Appeals.

MALLETT, C.J., and BRICKLEY and TAYLOR, JJ., concurred with CAVANAGH, J.

BOYLE, J. (*concurring*). Because I am unpersuaded that the statements come within the general prohibition on character evidence to prove action in conformity with character,[1] I agree with the majority's holding that the admission of the two out-of-court statements made by the complainant to Mary Stevens are not precluded by the rape-shield statute. I write separately, however, to address the hearsay issue. At the preliminary examination, the prosecutor objected to the witness' testimony on the basis of both hearsay and rape shield. On their face, the out-of-court statements are inadmissible hearsay. On remand, after proper objection, the trial court should make a factual determination regarding whether there is a sufficient nexus between the complainant's statement of future intent and the act at issue.

The statements fall within the purview of the general ban on hearsay evidence because they are extrajudicial statements offered for the truth of the matter asserted. Unless the contested statements are found to come within one of the enumerated exceptions, the evidence is inadmissible. MRE 802.

The most likely exception allowing admission of the evidence is MRE 803(3), which states:

---

[1] Consistent with MCL 750.520j; MSA 28.788(10), MRE 404(a)(3) precludes all sexual conduct character evidence of the victim to prove action in conformity therewith, save for two exceptions.

*Then existing mental, emotional, or physical condition.*
A statement of the declarant's then existing state of mind,
emotion, sensation, or physical condition (such as intent,
plan, motive, design, mental feeling, pain, and bodily
health), but not including a statement of memory or belief
to prove the fact remembered or believed unless it relates
to the execution, revocation, identification, or terms of
declarant's will.

The defense strategy in this case, and the issue
sought to be proved by the hearsay statements, is
consent. The state of mind at issue in this case is the
complainant's state of mind at the time the sexual
activity took place. I agree with the Court of Appeals
dissent that evidence of the complainant's state of
mind at the time the statements were made are not
probative of her actual state of mind at the time of
the sexual activity.

Rather, the statements made by the complainant,
indicating an intent to engage in sexual activity at an
unspecified later date, are being offered to show that
she later engaged in conduct consistent with her
expressed intent.[2]

The leading case dealing with the issue of admissi-
bility of statements of intent to show later conduct is
*Mutual Life Ins Co v Hillmon.*[3] Hillmon, a married
man, had taken out three life insurance policies with
his wife as beneficiary. In March, 1879, a man was
shot. The victim was identified as Hillmon by the man
who allegedly shot him. Mrs. Hillmon sued to recover

---

[2] MRE 803(3) does not explicitly address the question of admitting
statements of intent to prove that the intended act was done. However,
the Advisory Committee Notes to FRE 803(3), identical to MRE 803(3),
state that the *Hillmon* rule, "allowing evidence of intention as tending to
prove the doing of the act intended, is, of course, left undisturbed."

[3] 145 US 285, 286; 12 S Ct 909; 36 L Ed 706 (1892).

the proceeds of the life insurance policies. The identification of the decedent as Hillmon was disputed. The insurance company claimed that the decedent was another man, Frederick Walters, who had disappeared at the same time. Offered as evidence were letters from Walters indicating his intention to leave with "a certain Mr. Hillmon, a sheep trader, for Colorado, or parts unknown to me."[4] The letters were excluded as hearsay. The United States Supreme Court held that a declarant's statement of intention is admissible to prove that the declarant subsequently acted in conformity with that intention where the act is a disputed material fact and that the letters should have been admitted. The Court stated:

> The letters in question were competent not as narratives of facts communicated to the writer by others, nor yet as proof that he actually went away from Wichita, but as evidence that, shortly before the time when other evidence tended to show that he went away, he had the intention of going, and of going with Hillmon, which made it more probable both that he did go and that he went with Hillmon than if there had been no proof of such intention.[5]

However, the admissibility of statements of intention to show later conduct is not without limitation. Where the intention to be proved is only circumstantially relevant to prove the act at issue, there is a nexus requirement between the statement and the act:

> When the intention to be proved is important only as qualifying an act, its connection with that act must be shown, in order to warrant the admission of declarations of

---

[4] *Id.* at 288.
[5] *Id.* at 295-296.

the intention. But whenever the intention is of itself a distinct and material fact in a chain of circumstances, it may be proved by contemporaneous oral or written declarations of the party.[6]

Statements of intent to show later acts "derive [their] reliability and probative value from their nexus to the act itself."[7] In determining whether there is a sufficient nexus, the trial court considers the contemporaneity between the statement and the act, the opportunity for later reflection, and the relevance of the statements.[8] Professor McCormick notes that a common thread running through cases admitting the evidence is that the "intent stated was quite concrete, e.g., to do a specific act at a specific time."[9] While McCormick acknowledges that specificity is not generally stated as a requirement, he notes that the absence of specificity detracts from the probative value of the evidence.

Of course, whether there is a sufficient nexus between the complainant's statements and the act at issue is a preliminary question of fact to be determined by the trial court. MRE 104(a). The trial court is not limited by the Rules of Evidence in what it may consider in making its determination of admissibility, with the exception of privileges.

I concur in the majority opinion because the testimony is not precluded by the rape-shield statute. I write separately, however, to address the hearsay issue.

WEAVER and KELLY, JJ., concurred with BOYLE, J.

---

[6] *Id.* at 295.

[7] *United States v Hogan*, 886 F2d 1497, 1512 (CA 7, 1989) (the out-of-court declarant's statements were too vague and speculative to infer immediate action).

[8] *Id.*

[9] 2 McCormick, Evidence (4th ed), § 275, p 236.