PEOPLE v WASHINGTON

Docket No. 221851. Submitted September 11, 2001, at Detroit. Decided
        May 31, 2002, at 9:20 a.m. Leave to appeal sought.

    Allan Washington was convicted by a jury in the Wayne Circuit Court,
    Thomas E. Jackson, J., of armed robbery and assault with intent to
    do great bodily harm less than murder. Defendant and his code-
    fendant, Daniel Mathis, were in police custody for investigation of
    another matter when there was a police radio transmission con-
    cerning the shooting and robbery in this matter. As the police
    officers were listening to the radio transmission, Mathis blurted
    out: "I did it—I'm the shooter." Although the defendant sought and
    was granted a separate jury, the court ultimately permitted Mathis'
    statement to be admitted as substantive evidence against the defen-
    dant. During the course of the trial, the defendant brought to the
    court's attention suspected juror misconduct involving contact
    between a police officer who had been a spectator at the trial and
    one of the jurors. Although the court questioned the juror, it did
    not permit defense counsel to conduct a voir dire of the juror or to
    present a potential witness to the alleged misconduct before mak-
    ing its determination that there was no juror misconduct. The
    defendant appealed.

        The Court of Appeals held:

        1. The admission of the codefendant's inculpatory statement as
    substantive evidence presented two related issues: the status of the
    proffered evidence as hearsay and the concern that admitting such
    evidence violated the defendant's constitutional right to be con-
    fronted by the witnesses against him.

        2. Because the codefendant's statement was introduced to show
    that the codefendant had actually perpetrated the crime, the state-
    ment was offered to prove the truth of its assertion and was thus
    hearsay that was inadmissible unless it fell within one of the excep-
    tions to the hearsay rule. Because the codefendant's statement
    admitting his guilt was clearly against his penal interest, the state-
    ment clearly came within the penal interest exception of MRE
    804(b)(3).

        3. To be admissible as substantive evidence even though a defen-
    dant is unable to cross-examine the declarant, a statement must
    contain sufficient particularized guarantees of trustworthiness con-
    sidering the totality of the circumstances surrounding its utterance
    to justify its admission. Because there is an indication that the non-

testifying codefendant suffered from mental illness, the trial court abused its discretion in admitting the codefendant's statement as substantive evidence against the defendant, particularly in light of the fact that none of the other evidence presented provided a basis to bolster the reliance that may be placed in the trustworthiness of the statement. The error in admitting the statement cannot be said to be harmless.

4. The trial court abused its discretion in refusing to allow defense counsel to question the juror about the alleged misconduct of the juror and in refusing to allow the person who allegedly witnessed the juror misconduct to testify.

5. The defendant was afforded effective assistance of counsel at trial, trial counsel having fulfilled his ethical and professional duty to zealously advocate the interests of his client within the bounds of the law.

Reversed and remanded.

ZAHRA, J., concurring in part and dissenting in part, stated that the defendant's trial counsel effectively assisted the defendant at trial, but that the trial court did not commit error requiring reversal in admitting the codefendant's statement as evidence against the defendant and did not abuse its discretion in denying the defense counsel the opportunity to conduct a mid-trial voir dire of the juror who allegedly had engaged in juror misconduct. Given the circumstances surrounding the codefendant's making of the statement and the fact that the statement related solely to the codefendant's role in the crime, the statement was surrounded with adequate indicia of reliability to warrant its admission as substantive evidence against the defendant. Because the trial court's examination of the juror revealed that the juror had not discussed anything about the case during her lunch with the trial spectator and that the juror's association with the spectator would not influence her ability to render a fair decision, the court did not abuse its discretion in denying defense counsel's request to question the juror. The defendant's convictions should be affirmed.

CRIMINAL LAW — EVIDENCE — HEARSAY — CONFESSIONS OF CODEFENDANTS — CONSTITUTIONAL LAW — CONFRONTATION CLAUSE.

An out-of-court inculpatory statement of a codefendant who is not available for cross-examination may be admitted as substantive evidence against a defendant in a criminal prosecution without violating the Confrontation Clause where, considering the totality of the circumstances surrounding the proffered hearsay statement's utterance, the statement contains sufficient particularized guarantees of trustworthiness to justify its admission (US Const, Am VI; Const 1963, art 1, § 20).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Valerie M. Steer*, Assistant Prosecuting Attorney, for the people.

*Gerald M. Lorence*, for the defendant.

Before: K. F. KELLY, P.J., and HOOD and ZAHRA, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of armed robbery, MCL 750.529, and assault with intent to do great bodily harm less than murder, MCL 750.84. Defendant was sentenced to a term of six to fifteen years for the armed robbery conviction and a term of six to ten years for the assault conviction, the sentences to run concurrently. Defendant appeals as of right. We reverse and remand for a new trial.

I. BASIC FACTS AND PROCEDURAL HISTORY

During the late evening hours of May 7, 1998, the victim was shot and robbed by two men. His watch, pager, and $71 were taken. The first officer responding to the scene broadcast a description of the perpetrators over the air to other police officers.

Approximately five minutes later, two other police officers, at this time unaware of the shooting, observed defendant and his cousin, Daniel Mathis, pull into an alley behind a gas station. Because the area is known for drug and prostitution activities, they approached the vehicle. As one officer approached the driver's side of the vehicle, defendant left the vehicle and walked into the gas station. According to the testimony adduced at trial, when defendant did not respond to the officer's verbal commands to stop, the officer followed defendant into the

gas station and promptly returned him to the vehicle.
The officer indicated that when defendant unsuccess-
fully attempted to start the vehicle, defendant was
physically removed from the car. According to the
officers, defendant resisted, and both officers sub-
dued defendant, handcuffed him, and placed him in
the rear of the police cruiser.

As the defendant was being subdued, the officers
heard the broadcast concerning the shooting over the
police radio. As the officers listened to the descrip-
tion of the perpetrators, Mr. Mathis, who was
detained in the passenger seat of the defendant's vehi-
cle, blurted out: "I did it—I'm the shooter." Defendant
and Mathis were arrested and placed together in a
lineup. At the lineup, the victim identified defendant
as one of the perpetrators, but did not identify the
codefendant, Mathis. No gun, bullets, pager, or watch
were recovered from either defendant or the vehicle.

Before trial, defense counsel filed a motion for a
separate trial, or alternatively for a separate jury, on
the ground that defense counsel believed the pros-
ecution would attempt to introduce codefendant
Mathis' statement identifying himself as the shooter.
During the final conference, the trial court indicated
that it would grant defendant's motion for separate
juries, but did not address the issue of the statement.

On the first day of trial, the prosecutor raised the
issue of introducing Mathis' statement as substantive
evidence against defendant on the grounds that the
statement was against codefendant's penal interest
and did not otherwise inculpate defendant. In
response, defense counsel indicated that codefendant
was previously diagnosed as mentally ill and had a
history of psychological disturbances requiring psy-
chiatric treatment. Thus, defense counsel argued that
there was an issue pertaining to codefendant's compe-

tency. Additionally, defense counsel argued that admitting the statement against defendant in defendant's trial would unfairly prejudice defendant. Despite defense counsel's arguments, the trial court ruled that it would permit the statement to come in as substantive evidence against defendant.

On the third day of trial, defendant brought suspected juror misconduct to the court's attention. Defendant indicated that a juror went to lunch with and drove with a police officer who was present during the first two days of trial. The police officer was also alleged to have had contacts with the victim or his family. Although the court questioned the juror, it did not permit defense counsel to conduct a voir dire of the juror or to present a potential witness to the alleged misconduct.

The jury convicted defendant. We now reverse and remand for a new trial.

II. ADMISSIBILITY OF CODEFENDANT MATHIS' STATEMENT

Defendant argues that the trial court erred in admitting codefendant's statement identifying himself as the perpetrator. We agree.

This court reviews decisions regarding the admissibility of evidence for an abuse of discretion. *People v Schutte*, 240 Mich App 713, 715; 613 NW2d 370 (2000). When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). Similarly, because this issue implicates the Confrontation Clauses[1] of the state and federal

---

[1] US Const, Am VI; Const 1963, art 1, § 20.

constitutions, the issue is constitutional and is reviewed de novo. *People v Beasley*, 239 Mich App 548, 557; 609 NW2d 581 (2000).

In the instant matter, the prosecution introduced in defendant's trial as substantive evidence of defendant's guilt an out-of-court statement made by a codefendant. As the Court in *People v Richardson*, 204 Mich App 71, 73-74; 514 NW2d 503 (1994), quoting *People v Petros*, 198 Mich App 401, 409; 499 NW2d 784 (1993), observed:

> "The admissibility of a nontestifying codefendant's inculpatory statement as substantive evidence presents two distinct but related issues. The first is the status of the proffered evidence as hearsay. The second is the concern that admitting such testimony will violate the defendant's right 'to be confronted with the witnesses against him.'" [Citations omitted.]

Codefendant's statement identifying himself as the perpetrator of the shooting incident is indeed an unsworn out-of-court statement offered to prove the truth of its assertion. On appeal, the prosecution contends that the statement was not offered to prove that codefendant was actually the shooter, but rather to establish a justification for the officers' conduct in arresting defendant and placing him in a lineup for purposes of identification. We do not agree.

A review of the record indicates that the introduction of codefendant's statement identifying himself as the perpetrator was offered to prove that he *actually* perpetrated the crime. Because codefendant was a passenger in the defendant's vehicle five minutes after the shooting occurred, the admission of the statement leads to the inescapable conclusion that defendant was an accomplice to the shooting. Because the statement was offered to prove the truth of its assertion, the statement constitutes hearsay. *People v Poole*, 444

Mich 151, 158-159; 506 NW2d 505 (1993). Hearsay is inadmissible unless there is a specific exception allowing for its introduction. *People v Ivers*, 459 Mich 320, 331 (BOYLE, J., concurring); 587 NW2d 10 (1998).

The prosecution suggests that the statement is a statement wholly against codefendant's penal interest and thus admissible pursuant to MRE 804(b)(3). Indeed it would be difficult to imagine a statement more against one's penal interest than a statement admitting guilt. Because codefendant's statement identifying himself as the shooter is a statement that implicates the declarant himself, it clearly comes within the purview of MRE 804(b)(3). See *Richardson, supra* at 76. This, however, does not end our inquiry.

Here, the prosecution introduced the statement as substantive evidence of *defendant's* guilt in *defendant's* trial without any opportunity for cross-examination. As our Supreme Court aptly stated, the " 'truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination.' " *People v Watkins*, 438 Mich 627, 656; 475 NW2d 727 (1991), quoting *Lee v Illinois*, 476 US 530, 541; 106 S Ct 2056; 90 L Ed 2d 514 (1986) (emphasis omitted). Indeed, "the principal protection provided by the Confrontation Clause to a criminal defendant is the right to conduct cross-examination," *People v Gearns*, 457 Mich 170, 186; 577 NW2d 422 (1998), to ensure that " 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement,' " *Petros, supra* at 418, quoting *Dutton v Evans*, 400 US 74, 89; 91 S Ct 210; 27 L Ed 2d 213 (1970).

Because counsel on behalf of codefendant appeared and indicated that he would assert his cli-

ent's Fifth Amendment privilege if codefendant were called upon to testify, defendant's constitutional right to confrontation was implicated and the otherwise hearsay statement could not come in as substantive evidence unless the statement "falls within a firmly rooted hearsay exception or if it bears adequate indicia of reliability." *Schutte, supra* at 717-718.

The issue presented in the case sub judice is whether codefendant's statement contains sufficient "particularized guarantees of trustworthiness" considering the totality of the circumstances surrounding its utterance to justify its admission. See *Schutte, supra* at 719, quoting *Poole, supra* at 165 (" '[T]he totality of the circumstances must indicate that the statement is sufficiently reliable to allow its admission as substantive evidence although the defendant is unable to cross-examine the declarant.' "). On the record here before us, we find that it does not.

A review of the record reveals an assertion by defense counsel that codefendant Mathis suffered from mental illness and that he had a history of psychiatric and psychological treatment. Certainly, an inculpatory statement made by a mentally ill codefendant that tacitly inculpates defendant as his accomplice is not a statement that contains "particularized guarantees of trustworthiness" sufficient to introduce the statement as substantive evidence against defendant without the opportunity for cross-examination. Permitting codefendant's statement to come in as substantive evidence against defendant, while depriving defendant the opportunity to challenge that statement through the adversarial process, violates the bedrock principles underlying the Confrontation Clause itself. Indeed, " 'the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose . . .

infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.' " *Gearns, supra* at 186, quoting *Delaware v Fensterer,* 474 US 15, 22; 106 S Ct 292; 88 L Ed 2d 15 (1985) (emphasis omitted).

The trial court's admission of codefendant's inculpatory statement as substantive evidence against defendant without providing defendant any opportunity to challenge the statement through cross-examination is not harmless error. Based on the evidence presented at trial, it is more probable than not that a different outcome would have resulted without the admission of codefendant's statement.

On appeal, the prosecution asserts that defendant ran from the police officers, but neither the testimony of defendant nor the officers supports this assertion. Also, the prosecution contends that defendant tried to drive away. However, the testimony of the officers actually indicates that the car was never started and that they were not even sure if defendant attempted to insert the keys into the ignition. Furthermore, defendant was alleged to have stolen $71, but, when apprehended, he had over $500 on his person. Neither he nor codefendant had a gun, the stolen pager, the stolen watch, and these items were not found in the car in which they were traveling. The fact that defendant was found within minutes of the robbery within one mile of the crime scene does not tend to establish his guilt any more than any other person who lives in the area and was also at the gas station at the same time. Finally, the description the victim gave to the police was "quite vague" and did not match either the defendant or codefendant.

Although we acknowledge the victim identified defendant in a lineup, we do not believe this, standing

alone, clothes the codefendant's statement with "adequate indicia of reliability." The lineup was conducted ten days after the robbery and after the victim had been sedated and medicated in the hospital for five days. The victim identified the defendant as the man who shot him, but defendant was tried as the accomplice of the shooter. In addition, the victim did not identify the codefendant.

As we noted in *People v Spinks*, 206 Mich App 488, 493; 522 NW2d 875 (1994), quoting *People v Banks*, 438 Mich 408, 430; 475 NW2d 769 (1991), if the " ' "minds of an average jury" would have found the prosecution's case "significantly less persuasive" had the statement of the [accomplice] been excluded,' " then the error is not harmless. Considering that codefendant's statement is the only concrete evidence linking defendant to the crime for which he now stands convicted, we find that had the statement been properly excluded, the prosecution's case would have been significantly less persuasive in "the minds of an average jury". Accordingly, we find that the trial court abused its discretion by admitting the statement.

### III. MIDTRIAL VOIR DIRE

Defendant next argues that the trial court erred in not allowing defense counsel an opportunity to question a juror about contact with an individual who had been present during testimony and who may have had contact with the victim or his family. We agree. A trial court's decision whether to conduct a midtrial voir dire is reviewed for abuse of discretion. *People v Adams*, 245 Mich App 226, 240-241; 627 NW2d 623 (2001). An abuse of discretion obtains where "an unprejudiced person, considering the facts on which the trial court acted, would say there was no justifica-

tion or excuse for the ruling." *People v Ullah,* 216 Mich App 669, 673; 550 NW2d 568 (1996).

A criminal defendant has a constitutional right to be tried by a fair and impartial jury. US Const, Am VI; Const 1963, art 1 § 20. A defendant is entitled to relief from a verdict when information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn if the defendant can establish (1) that he was actually prejudiced by the presence of the juror in question or (2) that the juror was properly excusable for cause. *People v Daoust,* 228 Mich App 1, 8-9; 577 NW2d 179 (1998), citing *People v Hannum,* 362 Mich 660, 666-667; 107 NW2d 894 (1961), and *People v DeHaven,* 321 Mich 327, 330-334; 32 NW2d 468 (1948).

In this case, defense counsel requested the opportunity to question a juror because he had reason to suspect juror misconduct. He presented the trial court with the facts underlying this suspicion and presented a witness to corroborate the alleged misconduct. The trial court refused to allow the witness to speak and denied defense counsel's request to question the juror himself. On these facts, we find the trial court abused its discretion in refusing to question, or in not allowing defense counsel the opportunity to question, the juror about the alleged misconduct.

### IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Although the resolution of the previous issues does not require us to address the remaining issue raised by defendant on appeal, we do, however, comment upon defendant's claim for ineffective assistance of counsel. We note that a review of the complete record reveals that trial counsel for defendant did

provide effective assistance on defendant's behalf despite unfavorable rulings from the trial court. Trial counsel thus fulfilled his ethical and professional duty to zealously advocate the interests of his client within the bounds of the law. To impugn trial counsel's performance on the record contained in the instant matter precariously teeters on the edge of frivolity.

Reversed and remanded for a new trial. We do not retain jurisdiction.

ZAHRA, J. *(concurring in part and dissenting in part.)* I agree with the majority's conclusion that defendant's trial counsel effectively assisted defendant at trial. I write separately because I disagree with the majority's conclusion that the trial court committed error requiring reversal in admitting codefendant's inculpatory statement as evidence against defendant. I also disagree with the majority's conclusion that the trial court abused its discretion in denying defense counsel the opportunity to conduct a voir dire of a juror midtrial. I would affirm defendant's convictions.

### I. ADMISSIBILITY OF CODEFENDANT'S STATEMENT

Counsel for codefendant indicated that codefendant would assert his Fifth Amendment right against self-incrimination. Therefore, defendant's right to confront codefendant is implicated. In *People v Petros*, 198 Mich App 401; 499 NW2d 784 (1993), Justice (then Judge) CORRIGAN observed that the Confrontation Clause " 'permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial.' " *Id.* at 410, quoting *Idaho v Wright*, 497 US 805, 814; 110 S Ct 3139; 111 L Ed 2d 638 (1990). "Admission of a hearsay statement by an

unavailable declarant will not violate a defendant's right to confront his accusers if the statement falls within a firmly rooted hearsay exception or if it bears adequate indicia of reliability." *People v Schutte,* 240 Mich App 713, 717-718; 613 NW2d 370 (2000), citing *People v Poole,* 444 Mich 151, 162-163; 506 NW2d 505 (1993); see *Ohio v Roberts,* 448 US 56, 66; 100 S Ct 2531; 65 L Ed 2d 597 (1980).

Significantly, the majority concludes that defendant's rights under the Confrontation Clause were violated without considering whether the declaration against penal interest hearsay exception is "firmly rooted" in law. The majority finds a violation based only on the determination that the totality of the circumstances indicate there was not adequate indicia of reliability with respect to codefendant's statement. Such reasoning is erroneous. As stated in *Schutte, supra* at 717-718, introduction of hearsay by an unavailable declarant will not violate the Confrontation Clause if the hearsay exception under which the statement is introduced is "firmly rooted" in law *or* there are adequate indicia of reliability surrounding the statement. Thus, logic dictates that before a Confrontation Clause violation may be found, the Court must determine that the hearsay exception is not "firmly rooted" *and* there are not adequate indicia of reliability surrounding the statement. The majority has not eliminated, let alone considered, the possibility that the declaration against penal interest exception is "firmly rooted" in law, and, therefore, its determination that defendant's Sixth Amendment rights were violated is flawed.

Whether the declaration against penal interest hearsay exception is "firmly rooted" in law is a close question, upon which state and federal courts have reached different conclusions. See *Lilly v Virginia,*

527 US 116, 134; 119 S Ct 1887; 144 L Ed 2d 117
(1999) (plurality, opining that "accomplices' confessions that inculpate a criminal defendant are not
within a firmly rooted exception to the hearsay rule
as that concept has been defined in our Confrontation
Clause jurisprudence."), and *Neuman v Rivers*, 125
F3d 315 (CA 6, 1997), cert den 522 US 1030 (1997)
(interpreting Michigan Rule of Evidence 804[b][3] and
concluding that the exception is "firmly rooted."); see
also *United States v McKeeve*, 131 F3d 1, 9 (CA 1,
1997), *People v Wilson*, 17 Cal App 4th 271, 278; 21
Cal Rptr 2d 420 (1993), and *State v Tucker*, 109 Or
App 519, 526; 820 P2d 834 (1991) (each holding the
exception *is* firmly rooted), and *Simmons v Maryland*, 333 Md 547, 558-559; 636 A2d 463 (1994), *Linton
v State*, 880 P2d 123, 129 (Alas App, 1994), and
*United States v Flores*, 985 F2d 770, 776 (CA 5, 1993)
(each holding the exception *is not* firmly rooted).[1]
However, I need not decide whether MRE 804(b)(3) is
"firmly rooted" in law because I conclude that adequate indicia of reliability surrounded codefendant's
statement. See *Poole, supra* at 163-164, *People v Beasley*, 239 Mich App 548, 557-559; 609 NW2d 581 (2000),
and *Petros, supra* at 412.

In *Poole, supra* at 165, our Supreme Court
instructed:

> In evaluating whether a statement against penal interest
> that inculpates a person in addition to the declarant bears

---

[1] No Michigan case has squarely addressed the issue whether MRE
804(b)(3) is "firmly rooted" in law. In *People v Richardson*, 204 Mich
App 71, 77; 514 NW2d 503 (1994), this Court in obiter dictum "suggest[ed]
that MRE 804(b)(3) is not 'firmly rooted' in Michigan law." The *Richardson* panel offered no rationale to support its conclusion. Other Michigan
courts have declined to address the issue given their conclusions that sufficient indicia of reliability established no Confrontation Clause violation.
See *Poole, supra* at 163-164, *People v Beasley*, 239 Mich App 548, 557-559;
609 NW2d 581 (2000), and *Petros, supra* at 412.

sufficient indicia of reliability to allow it to be admitted as substantive evidence against the other person, courts must evaluate the circumstances surrounding the making of the statement as well as its content.

The presence of the following factors would favor admission of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates—that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener.

On the other hand, the presence of the following factors would favor a finding of inadmissibility: whether the statement (1) was made to law enforcement officers or at the prompting or inquiry of the listener, (2) minimizes the role or responsibility of the declarant or shifts blame to the accomplice, (3) was made to avenge the declarant or to curry favor, and (4) whether the declarant had a motive to lie or distort the truth.

Courts should also consider any other circumstance bearing on the reliability of the statement at issue. See, generally, *United States v Layton*, 855 F2d 1388, 1404-1406 (CA 9, 1988). While the foregoing factors are not exclusive, and the presence or absence of a particular factor is not decisive, the totality of the circumstances must indicate that the statement is sufficiently reliable to allow its admission as substantive evidence although the defendant is unable to cross-examine the declarant.

In the present case, codefendant's statement "I did it—I'm the shooter" was voluntarily given. Moreover, the statement was uttered spontaneously within minutes of the events referenced. While the statement was made to police officers, it is significant that codefendant did not minimize his role in the crime. To the contrary, his statement indicates an attempt to assign responsibility only to him. Unlike the majority, I do not consider codefendant's alleged mental status reason to find his statement unreliable. While defendant's appellate counsel speculates that codefendant

"may have been mentally or psychologically unstable at the time [the statement was made]," there is no record evidence establishing that codefendant was mentally unstable at the time of the offense. Codefendant was evaluated and determined mentally competent to stand trial. Given the circumstances surrounding codefendant's making of the statement and the statement's content, I conclude there were sufficient indicia of reliability. *Poole, supra* at 165. Thus, admission of the hearsay statement did not violate defendant's rights under the Confrontation Clause. *Schutte, supra* at 717-718.

## II. DENIAL OF MIDTRIAL VOIR DIRE

I further conclude that the trial court did not abuse its discretion when it denied defendant's counsel's request to conduct a voir dire of a juror in the midst of trial. During a break in trial, defendant's counsel suggested to the trial judge that a juror had been seen during a previous lunch break associating with a trial spectator, who counsel suspected had some degree of contact with the victim or the victim's family. The judge questioned the juror regarding the incident, at which time the juror indicated the person in question was a "friend" who had come to meet her for lunch. The juror specified that she did not discuss anything in regard to the case with the person and verified that her association with the person would not influence her ability to make a fair decision in this case. Under these circumstances, the trial court's decision to deny defendant's counsel's request to further question the juror was not grossly violative of fact and logic. The juror answered the trial judge's pointed questions. Defendant's counsel's suspicion in regard to the juror's bias was merely speculative. Further questioning by counsel posed the real risk of intimidating the

juror and, thereby, ultimately serving to chill the free and full jury deliberations on the evidence. See *People v Adams*, 245 Mich App 226, 241; 627 NW2d 623 (2001). Therefore, I would find no error and affirm defendant's convictions.