*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROGAN EDWARD LAMPE,

      Defendant-Appellant.

FOR PUBLICATION
February 21, 2019
9:00 a.m.

No. 342325
Washtenaw Circuit Court
LC No. 14-000322-FH

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

BOONSTRA, J.

Defendant appeals by right his sentence on two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a). The trial court sentenced defendant to concurrent prison terms of 9 to 15 years' imprisonment for each of his CSC-III convictions and 16 to 24 months for his CSC-IV conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from his sexual assault of a 13-year-old boy, WO, in 2014. At the time of the assault, defendant was 26 years old and dating WO's cousin, who introduced defendant to WO and his family. At that time, defendant was a registered sex offender who had been dismissed from the military for wrongful sexual conduct perpetrated on a sleeping army officer.

On the night of the assault, WO's mother invited defendant over for dinner. That night, when defendant was alone with WO, defendant offered to give him a massage after WO said his back hurt from lacrosse practice. During the massage, WO fell asleep. Defendant then removed his and WO's clothing. WO awoke to find defendant on top of him; defendant penetrated WO anally and orally.

Following his jury trial convictions, the trial court originally sentenced defendant in 2015 within the applicable guidelines range to 10 to 15 years' imprisonment for each of his CSC-III convictions and 16 to 24 months' imprisonment for his CSC-IV conviction. Defendant appealed by right to this Court. On appeal, we affirmed defendant's convictions, but we remanded for resentencing on the basis of a scoring error involving prior record variable (PRV) 5 that affected the applicable minimum sentence guideline range.[1] On remand, the trial court imposed an out-of-guidelines sentence, sentencing defendant as described. This appeal followed.

## II. OFFENSE VARIABLES

In his appellate brief and Standard 4 brief[2], defendant challenges the scoring of offense variables (OVs) 3, 4, 10, and 11. Defendant argues that the trial court lacked authority to assess points for OV 3 and OV 10 on remand because they were not scored at the original sentencing. Defendant also asserts that the trial court clearly erred in its assessment of OVs 3, 4, 10, and 11. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." See *Hardy*, 494 Mich at 438. "Whether a trial court followed an appellate court's ruling on remand is a question of law that this Court reviews de novo." *Schumacher v Dep't of Nat Res*, 275 Mich App 121, 127; 737 NW2d 782 (2007).

### A. AUTHORITY TO ASSESS DEFENDANT POINTS FOR OVs 3 AND 10

We disagree with defendant's assertion that the trial court lacked authority to score OVs 3 and 10 at the resentencing. Following a remand from this Court, "[t]he power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *People v Fisher*, 449 Mich 441, 446-447; 537 NW2d 577 (1995). "When an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *People v Russell*, 297 Mich App 707, 714; 825 NW2d 623 (2012).

In our previous opinion, we found error in the scoring of PRV 5 and concluded that, because this error affected the appropriate guidelines range, defendant was "entitled to

---

[1] See *People v Lampe*, unpublished per curiam opinion of the Court of Appeals, issued June 23, 2016 (Docket No. 326660).

[2] A supplemental appellate brief filed in propria persona by a criminal defendant under Michigan Supreme Court Administrative Order 2004-06, Standard 4.

resentencing."[3] By ordering "resentencing" without any specific instructions or any prohibitions on scoring OVs on remand, this Court returned the case to the trial court in a presentence posture, allowing the trial court to consider every aspect of defendant's sentence de novo. See *People v Rosenberg*, 477 Mich 1076; 729 NW2d 222 (2007); *People v Williams (After Second Remand)*, 208 Mich App 60, 65; 526 NW2d 614 (1994). The trial court could not take action inconsistent with this Court's previous opinion, *Fisher*, 449 Mich at 446-447, but this Court's previous opinion did not address OV 3 or OV 10, and nothing in the trial court's assessment of OV 3 or OV 10 was inconsistent with that opinion. The trial court's authority on remand extended to considering the scoring of OV 3 and OV 10 de novo. See *Rosenberg*, 477 Mich at 1076; *Williams (After Second Remand)*, 208 Mich App at 65.

## B. OV 3

The trial court did not clearly err by assessing 10 points for OV 3. Points are assessed under OV 3 for "physical injury to a victim," MCL 777.33(1), and a score of 10 points is warranted when "[b]odily injury requiring medical treatment occurred to a victim," MCL 777.33(1)(d). As defined by this Court, the term " 'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011).

The trial court concluded that WO had injuries to his ears (caused by bites from defendant) and his anus and that WO received medical treatment for these injuries, which included overnight hospitalization and medical treatment spanning a number of weeks to prevent WO from contracting sexually transmitted diseases. These factual findings are not clearly erroneous and are supported by a preponderance of the evidence. See *Hardy*, 494 Mich at 438. The evidence showed that WO's ears were "cut," red, swollen, and bruised. Following the sexual assault, WO reported pain in his "butt," and WO's anus was described by his mother as red, "hemorrhoidal," bloody, and sore. As a result of these bodily injuries, WO sought medical treatment and was hospitalized overnight. The fact that WO was hospitalized as a result of his bodily injuries supports the trial court's scoring of OV 3. See *People v Bosca*, 310 Mich App 1, 50; 871 NW2d 307 (2015), lv app held in abeyance by ___ Mich ___; 911 NW2d 465 (2018). In addition, after leaving the hospital, WO underwent a series of treatments to prevent sexually transmitted diseases. On the whole, given WO's bodily injuries resulting in his hospitalization as well as subsequent treatments, the trial court did not err by assessing 10 points for OV 3 for bodily injury requiring medical treatment. See MCL 777.33(1)(d); see also *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011); *Hardy*, 494 Mich at 438.

## C. OV 4

The trial court also did not clearly err by assessing 10 points for OV 4. OV 4 addresses "psychological injury to a victim." MCL 777.34(1). OV 4 should be assigned 10 points when "[s]erious psychological injury requiring professional treatment occurred to a victim."

---

[3] *Lampe*, unpub op at 4.

-3-

MCL 777.34(1)(a). For example, "[t]he trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). While actual treatment is not required for scoring OV 4, evidence that a victim sought counseling may be considered. *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009). However, the scoring of OV 4 cannot be based on the assumption that people *typically* suffer psychological injury when they are victims of the type of crime in question; and while relevant, a victim's fear *during* the crime does not by itself justify the scoring of OV 4. *People v White*, 501 Mich 160, 163-165 & n 3; 905 NW2d 228 (2017).

In this case, WO and his father provided victim impact statements, both at the original sentencing and at resentencing. These statements were properly considered by the trial court when assessing points for OV 4, see *People v Drohan*, 264 Mich App 77, 90; 689 NW2d 750 (2004), and provided ample support for the trial court's assessment. Both WO and his father reported a change in WO's personality; he became angry, afraid, distrustful, defensive, and hypervigilant. WO was so fearful as a result of the attack that he slept with a knife under his bed for a period. WO suffered flashbacks and panic attacks when reminded of the assault by sights, sounds, or even smells. As a result of the attack, WO sought psychological counseling, and he was in counseling for 1½ years, attending therapy as often as twice a week; at the time of resentencing, more than three years after the assault, WO still suffered the psychological effects of defendant's conduct. The trial court did not err by assessing 10 points for OV 4.[4] *Hardy*, 494 Mich at 438.

D. OV 10

The trial court also did not err by assessing 15 points for OV 10. OV 10 relates to the "exploitation of a vulnerable victim," and it is properly assessed at 15 points when "predatory conduct was involved." MCL 777.40(1)(a). The term "predatory conduct" "means preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a). In other words, " '[p]redatory conduct' under the statute is behavior that precedes the offense, directed at a person for the primary purpose of causing that person to suffer from an injurious action or to be deceived." *People v Cannon*, 481 Mich 152, 161; 749 NW2d 257 (2008). To aid trial courts in determining if predatory conduct occurred under OV 10, the Michigan Supreme Court has set forth the following inquiries:

---

[4] In disputing the scoring of OV 4, defendant relies heavily on Judge Gleicher's concurring opinion in *People v McChester*, 310 Mich App 354, 360-369; 873 NW2d 646 (2015) (GLEICHER, J., concurring), and argues that under Judge Gleicher's interpretation, OV 4 should not be scored in this case. However, as a concurring opinion, Judge's Gleicher's opinion is nonbinding. See *People v Armstrong*, 207 Mich App 211, 214-215; 523 NW2d 878 (1994). In any event, we are not persuaded that the result in this case would be different even under Judge Gleicher's interpretation of OV 4.

(1) Did the offender engage in conduct before the commission of the offense?

(2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*Id*. at 162.]

"If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 because the offender engaged in predatory conduct under MCL 777.40." *Cannon*, 481 Mich at 162.

In this case, the trial court explained its assessment of 15 points for OV 10 as follows:

We're dealing with a boy who was 13 years old at the time in the safety, he thought, of his own home with defendant who had groomed him through Facebook and prior contacts. This was a boy who was youthful and vulnerable because of his naivete, with the time and location in his home waiting until he was asleep. That's predatory conduct and I'm scoring 15 points on OV 10.

The trial court's reasoning is sound. Defendant engaged in preoffense conduct, including Facebook exchanges and other contacts with WO, visiting WO's home, spending leisure time with WO, and discussing personal topics. This conduct led WO to trust defendant and feel comfortable alone with him, thereby making it easier for defendant to carry out his sexual assault. See *People v Waclawski*, 286 Mich App 634, 686; 780 NW2d 321 (2009). Indeed, defendant's conduct, especially his preoffense physical contact with WO in the form of massages, putting his arm around WO, et cetera, could be termed "grooming." "Grooming" refers to "less intrusive and less highly sexualized forms of sexual touching, done for the purpose of desensitizing the victim to future sexual contact." *People v Steele*, 283 Mich App 472, 491-492; 769 NW2d 256 (2009). Additionally, as the trial court noted, defendant waited to begin his assault until WO was not only alone with defendant but asleep. See *People v Ackah-Essien*, 311 Mich App 13, 37; 874 NW2d 172 (2015) ("The timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct.").

Defendant directed these various preoffense behaviors toward WO, whom the trial court concluded was vulnerable because of his youth and naiveté. Moreover, this vulnerability would have been readily apparent because it is well recognized that a youthful victim "may be susceptible to physical restraint or temptation by an adult." *People v Johnson*, 298 Mich App 128, 133; 826 NW2d 170 (2012). Finally, the record supports the trial court's conclusion that defendant's preoffense behavior was done for the purpose of victimization. Defendant befriended WO, earning his confidence and gaining an opportunity for defendant to be alone with WO while he was relaxed and unguarded. Defendant then waited until WO was sleeping and thus even more vulnerable before carrying out his assault. The trial court properly assessed 15 points for OV 10. *Hardy*, 494 Mich at 438.

## E. OV 11

The trial court also did not clearly err by assessing 50 points for OV 11. OV 11 is scored for "criminal sexual penetration," and it is properly assigned 50 points when "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). To score a sexual penetration under OV 11, the sexual penetration must arise out of the sentencing offense. MCL 777.41(2)(a). Notably, points cannot be scored under OV 11 "for the penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 777.41(2)(c).

In this case, the trial court concluded that there were three penetrations and, excluding the penetration that formed the basis of the sentencing offense, assessed 50 points for OV 11 on the basis of the remaining two sexual penetrations. These three distinct acts of sexual penetration—which all occurred on the same day, at the same place, during the same course of conduct—arose out of the sentencing offense for purposes of OV 11. See MCL 777.41(2)(a); *People v Mutchie*, 251 Mich App 273, 277; 650 NW2d 733 (2002). Nevertheless, defendant argues that OV 11 should not be scored for two reasons.

First, defendant argues that, because he received two convictions for CSC-III, neither penetration resulting in a conviction could be considered when assessing points for OV 11. However, this Court has repeatedly rejected this argument. See *People v Cox*, 268 Mich App 440, 455-456; 709 NW2d 152 (2005); *People v McLaughlin*, 258 Mich App 635, 672-678; 672 NW2d 860 (2003); *Mutchie*, 251 Mich App at 278-281. In particular, this Court has concluded that "OV 11 requires the trial court to exclude *the one penetration* forming the basis of the offense when the sentencing offense itself is first-degree or third-degree CSC." *McLaughlin*, 258 Mich App at 676 (emphasis added). All other sexual penetrations arising from the sentencing offense, including penetrations resulting in separate CSC-I or CSC-III convictions, are properly considered under OV 11. See *Cox*, 268 Mich App at 455-456; *McLaughlin*, 258 Mich App at 672-678; *Mutchie*, 251 Mich App at 278-281.[5]

Second, defendant argues that, while WO described a third, uncharged sexual penetration (when defendant performed fellatio on WO), there is insufficient evidence that this penetration occurred. However, points can be assessed under OV 11 on the basis of uncharged sexual penetrations, provided that, as in this case, they arise out of the sentencing offense. See, e.g., *People v Wilkens*, 267 Mich App 728, 743; 705 NW2d 728 (2005). Further, contrary to defendant's claim that the jury must have found that the third penetration occurred, judicial fact-finding is entirely proper at sentencing when, as in this case, the trial court treated the guidelines as advisory only. See *People v Biddles*, 316 Mich App 148, 159-161; 896 NW2d 461 (2016). Given WO's testimony that three penetrations occurred during the same course of conduct, the

---

[5] Defendant also briefly suggests that OV 11 cannot be scored because his second CSC-III conviction was taken into account when scoring PRV 7, which involves subsequent or concurrent felony convictions. See MCL 777.57(1)(a). This "double counting" argument lacks merit because PRV 7 and OV 11 involve "two separate categories addressing two different situations." See *People v Jarvi*, 216 Mich App 161, 163; 548 NW2d 676 (1996).

trial court did not clearly err by assessing 50 points for OV 11 because, excluding the sentencing offense, two or more criminal sexual penetrations occurred. See MCL 777.41(1)(a); *Hardy*, 494 Mich at 438.

### III.  CONTENTS OF THE PSIR

In his appellate brief and Standard 4 brief, defendant raises a variety of challenges relating to the contents of his pre-sentence investigation report (PSIR), and he argues that inaccuracies entitle him to resentencing or, at a minimum, a remand for correction of clerical errors. More specifically, defendant argues that the trial court abused its discretion by refusing to strike from the PSIR the phrase "deemed a predator." Defendant also challenges the accuracy of personal information contained in the PSIR as well as the presentation of his military history and past criminal convictions. Additionally, defendant contends that victim impact statements should have been stricken from the PSIR. Finally, defendant argues that the trial court abused its discretion by refusing to attach to the PSIR a separate, defense-commissioned report. We disagree. We review for an abuse of discretion the trial court's decision regarding the information in the PSIR. *Waclawski*, 286 Mich App at 689.

"The presentence investigation report is an information-gathering tool for use by the sentencing court." *Morales v Mich Parole Bd*, 260 Mich App 29, 45; 676 NW2d 221 (2003). It is "intended to insure that the punishment is tailored not only to the offense, but also to the offender." *People v Miles*, 454 Mich 90, 97; 559 NW2d 299 (1997). The PSIR is used by the trial court at sentencing, but it also "follows the defendant to prison." *People v Maben*, 313 Mich App 545, 553; 884 NW2d 314 (2015) (quotation marks and citation omitted). That is, the PSIR must be provided to the Department of Corrections, see MCL 771.14(9); MCR 6.425(A)(3), and it can have ramifications relating to security classification or parole, *Maben*, 313 Mich App at 553.

"At sentencing, either party may challenge the accuracy or relevancy of any information contained in the presentence report." *Waclawski*, 286 Mich App at 689. "The information is presumed to be accurate, and the defendant has the burden of going forward with an effective challenge, but upon assertion of a challenge to the factual accuracy of information, a court has a duty to resolve the challenge." *Id*. "[T]he trial court must allow the parties to be heard and must make a finding as to the challenge or determine that the finding is unnecessary because the court will not consider it during sentencing." *Id*. at 689-690. "Once a defendant effectively challenges a factual assertion, the prosecutor has the burden to prove the fact by a preponderance of the evidence." *Id*. at 690. "If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record and the information must be corrected or stricken from the report." *Id*.

At resentencing, defendant objected to the phrase "the defendant is deemed a predator" found in the "Evaluation and Plan" section of the PSIR. Defendant asserts that this descriptor was inappropriate because defendant had never been diagnosed as a predator and the statement is nothing but an agent's subjective opinion. After considering the parties' arguments, the trial

court refused to strike the comment from the PSIR. Given defendant's predatory conduct in this case as scored under OV 10, particularly when considered in light of his pattern of sexually preying on sleeping victims, the term "predator" cannot be considered inaccurate.[6] See *People v Lucey*, 287 Mich App 267, 276; 787 NW2d 133 (2010). Consequently, the trial court did not abuse its discretion by refusing to strike this statement from the PSIR. See *Waclawski*, 286 Mich App at 689-690.

The majority of defendant's other challenges relate to the original PSIR, which was incorporated into the updated PSIR for the resentencing with the caveat that "[a]ny additions or corrections are contained herein," i.e., in the updated PSIR. Accordingly, defendant's complaints regarding his level of education, his number of military convictions, and OV 13 and OV 19 are without merit because his education is correctly reflected in the updated PSIR, his past criminal convictions were updated to reflect the status of his military convictions following his military appeal, and OV 13 and OV 19 were not scored. To the extent that defendant disputes the contents of the original PSIR that were altered by the updated PSIR, his arguments are moot.

Regarding the remainder of defendant's other challenges to the information contained in the PSIR, although the trial court gave defense counsel every opportunity to speak and to consult with defendant at resentencing, defendant failed to make an effective challenge in the trial court, and thus, he is not entitled to relief on appeal. See *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003). Even if we were to review these challenges for plain error affecting substantial rights, we would find no such error. *People v Earl*, 297 Mich App 104, 111; 822 NW2d 271 (2012). For instance, defendant claims that his most recent employer was "Real Big Marketing," but he is serving multi-year prison terms, and there is no evidence that he has retained his employment while incarcerated; accordingly, there is no plain error in the PSIR's description of him as "unemployed." *Id*. Defendant also challenges the words "groped" and "fondled" as they relate to his military convictions, asserting that the PSIR should simply say that he "touched" his military victims. This semantical argument is without merit, particularly given that defendant's military victim testified in the current case as an other-acts witness, describing how he awoke to find defendant's hand "rubbing" and "stroking" his penis "like if someone was masturbating." Defendant also claims that his military dates of service should be 2008 to 2014, but he offers no record support for this assertion. Likewise, defendant claims that the PSIR should report a "discharge other than honorable" from the military, but he has not explained what is inaccurate about reporting that defendant was dismissed from the service as a result of a court-martial as set forth in the PSIR. Absent an effective challenge by defendant, the PSIR is presumed to be accurate, and defendant is not entitled to correction of any information in

---

[6] Although defendant asserts that there is no evidence he has been diagnosed as a predator, the lack of a diagnosis is irrelevant because the PSIR cannot plausibly be read to suggest that defendant was clinically diagnosed as a predator. Cf. *People v Uphaus (On Remand)*, 278 Mich App 174, 182; 748 NW2d 899 (2008) (finding no error in the use of the term "paranoia" in a PSIR when "it is clear that no reasonable reader of the PSIR could mistake this statement for a clinical diagnosis").

the PSIR. See *Callon*, 256 Mich App at 334. Defendant also argues that statements in the PSIR indicating that this Court approved the assessment of costs during his prior appeal are inaccurate. But, while this Court remanded to establish a factual basis for the amount of costs imposed, this Court did note that the costs imposed were authorized by MCL 769.1k(1)(b)(*iii*) and that the trial court did not err by imposing court costs on defendant. The trial court did not plainly err by failing to sua sponte order this statement stricken from the PSIR.

Additionally, defendant challenges the factual underpinnings of his military convictions, offering a long explanation for his conduct and asserting that he was wrongfully convicted on the basis of some sort of vindictive persecution by the victim in the military case. Defendant's self-serving assertions are wholly unsupported by the lower court record, and his appeal before this Court is not a proper vehicle by which to relitigate his military convictions.

Defendant also asserts that victim impact statements should not have been included in the PSIR because "[t]here is no way to rebut" the statements. Defendant's argument is without merit, and the trial court did not abuse its discretion by including statements from WO and his parents. "MCL 780.764 and 780.765 grant individuals who suffer direct or threatened harm as a result of a convicted individual's crime the right to submit an impact statement both at the sentencing hearing and for inclusion in the PSIR." *Waclawski*, 286 Mich App at 691. See also MCL 777.14(2)(b); MCR 6.425(A)(1)(g). "[T]he right is not limited exclusively to the defendant's direct victims," but may also include others, such as family members. *Waclawski*, 286 Mich App at 691-692. Although victim impact statements are often subjective and difficult to dispute, this does not necessitate exclusion of the statements from the PSIR. See *Maben*, 313 Mich App at 555; *Lucey*, 287 Mich App at 276. "[T]he sentencing standards for ensuring that the goals of sentencing are met, along with the court's knowledge that victim impact statements are the subjective opinions of victims, are sufficient protections to ensure that a defendant is not sentenced in response to emotional pleas." *Maben*, 313 Mich App at 555. Accordingly, contrary to defendant's arguments, the trial court acted well within its discretion by allowing WO and his parents to offer victim impact statements and by including those statements in the PSIR. See *Waclawski*, 286 Mich App at 691-691.

Further, the trial court did not abuse its discretion by declining to attach to the PSIR a 100+ page defense-commissioned report. This proposed report is not included in the lower court record or provided by defendant on appeal, and defendant provides no legal authority for the proposition that a defendant has the right to prepare his own report for inclusion in the PSIR. Absent factual and legal support for his argument, defendant has abandoned his assertion that the defense-commissioned report should have been included. See *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).[7]

---

[7] In his Standard 4 brief, defendant suggests that his defense-commissioned report could be considered "other pertinent data" within the meaning of MCR 6.425(A)(1)(d). However, MCR 6.425(A)(1)(d) calls for a "brief social history" that is part of an overall "succinct" PSIR. The defense-commissioned report is more than 100 pages, far from a "succinct" report or a "brief" social history. Further, from the available record it appears that the defense-

Ultimately, defendant's presentence report complied with the statutory requirements, and he was sentenced based on accurate information. See *People v Young*, 183 Mich App 146, 147-148; 454 NW2d 182 (1990). Defendant has not shown that the trial court abused its discretion in evaluating the information contained in the PSIR. *Waclawski*, 286 Mich App at 689.

## IV. OUT-OF-GUIDELINES SENTENCE

Next, defendant argues that he is entitled to resentencing because his sentence is unreasonable and disproportionate. Specifically, defendant asserts that the reasons articulated by the trial court for imposing an out-of-guidelines sentence did not justify the sentence imposed because these circumstances were already accounted for by OV 4 and OV 10. In his Standard 4 brief, defendant also offers a variety of challenges to the proportionality of his sentence. We disagree.

This Court reviews an out-of-guidelines sentence for reasonableness. *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017); see also *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017), lv gtd 501 Mich 1066 (2018). A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant. *Id*. at 477, citing *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). That is, sentences imposed by a trial court must be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *Milbourn*, 435 Mich at 636. The trial court's fact-finding at sentencing is reviewed for clear error. *People v Garay*, 320 Mich App 29, 43; 903 NW2d 883 (2017).

"[A] sentence is reasonable under *Lockridge* if it adheres to the principle of proportionality set forth in *Milbourn*."[8] *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). *Milbourn*'s principle of proportionality "requires the sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 352 (quotation marks and citation omitted). An out-of-guidelines sentence "may be imposed when the trial court determines that "the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *People v Steanhouse (On Remand)*, 322 Mich App 233, 238; 911 NW2d 253 (2017), lv app held in abeyance ___ Mich ___; 910 NW2d 656 (2018).

> Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

---

commissioned report includes information that cannot plausibly be considered "pertinent," such as certificates of defendant's graduation from prekindergarten and kindergarten. Defendant's reliance on MCR 6.425(A)(1)(d) is misplaced.

[8] *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Walden,* 319 Mich App at 352-253 (quotation marks and citation omitted).]

The legislative guidelines remain a "useful tool" that must be taken into account when sentencing a defendant, and "a trial court must justify the [out-of-guidelines] sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey,* 321 Mich App at 524-525 (quotation marks and citation omitted).

In this case, when resentencing defendant, the trial court imposed a lower minimum sentence than had been originally imposed for defendant's CSC I convictions. Nonetheless, the sentence imposed was above the 57 to 95 month range recommended by the guidelines. The trial court provided the following explanation for the sentence imposed:

Okay. Well, I am appreciate of the facts [sic] that it seems as if you're gaining insight and it does appear from the submission packet that was prepared by the defense that you're taking advantage of all the programs and opportunities in the Michigan Department of Corrections. So hopefully, when you're released, you're going to be in a lot better position than when you went in.

However, it is shameful that you took advantage of this 13-year-old and robbed him of his innocence and his childhood. The—I understand that the sentence—the charges reflect criminal sexual conduct of a person between the ages of 13 to 15. This child was at the young end of that. He was 13 at the time. He was groomed and taken advantage of in ways that I don't think are appropriately considered or fully considered by the guidelines.

The defendant was on the sex offender registry and although he befriended the victim and his family, he didn't disclose that he was on the sex offender registry, that he was kicked out of the military for behavior unbecoming an officer and sexual contact with the others when they were asleep. And the fact that this happened when this boy was asleep, in his own home, makes it all worse because as his father referenced, he was afraid to even go to sleep at night, to be in his own home.

People should be able to feel safe in their homes and when you rob a child of the safety of his home so that he feels like he has to have a knife under his bed to go to sleep, I don't think the guidelines fully reflect that at a range of 57 to 95. So, for criminal sexual conduct count one, third degree, person age 13 through 15 as well count two, criminal sexual conduct, third degree, a person between age 13 and 15, I believe a sentence that would be proportionate to this offense and to this offender is a sentence to nine years to fifteen years . . . .

Considering the reasons articulated by the trial court, we conclude that the trial court did not abuse its discretion by imposing the sentences it did. The trial court identified two basic reasons for the departure: (1) defendant's grooming behavior, particularly defendant's grooming behavior in the context of his failure to disclose past sexual misconduct, and (2) the location and timing of the offense, which resulted in WO feeling unsafe in his own home. Defendant contends that these facts were already accounted for by OV 10 and OV 4 respectively. We disagree.

First, although OV 10 accounts to some degree for defendant's predatory conduct and grooming behavior, the trial court identified circumstances—namely, defendant's past sexual misconduct and status as a registered sex offender—that made his grooming of WO particularly egregious. By withholding information about his past sexual misconduct and status as a registered sex offender until he had already befriended the WO and his family,[9] defendant was in a position of trust that enabled him to be in WO's home at night and to commit the sexual assault in this case. WO had no warning that sleeping in defendant's presence would place him at risk of sexual assault. Withholding this pertinent information from WO and his family enabled defendant to groom the 13-year-old and to initiate the assault, and these circumstances are not adequately accounted for in the scoring of OV 10. Thus, the trial court did not err by considering these facts when sentencing defendant.

Second, while defendant was assessed points for OV 4, the trial court did not err by concluding that the guidelines did not adequately account for the extent to which the timing and location of the assault resulted in WO's loss of security. It is true that, to some extent, OV 4 accounted for WO's serious psychological injury requiring professional treatment. However, as discussed, as a result of the assault, WO experienced numerous psychological injuries, including panic attacks, flashbacks, hypervigilance, anger, and personality changes, which necessitated 1½ years of counseling and which continued to some degree three years after the assault as of the time of resentencing. On their own, these serious psychological injuries resulting from the sexual assault merit a score of 10 points for OV 4. See *Armstrong*, 305 Mich App at 247. But because of the timing and location of the sexual assault, which defendant initiated while WO slept in his own home, WO was also robbed of a sense of security in his own home, to the extent that he slept with a knife under his bed. WO's response—to not only the violation of his person but also the violation of his home—is not adequately accounted for by the scoring of OV 4. Accordingly, the trial court did not err by finding that this variable was given inadequate weight.

---

[9] In his Standard 4 brief, defendant asserts that he did inform WO's mother and cousin of his past sexual misconduct and discharge from the military. However, defendant fails to cite to the record in support of his factual assertions, see MCR 7.212(C)(7), and thus he has abandoned this claim, see *Kelly*, 231 Mich App at 640-641. In any event, although there was evidence that defendant told WO's mother that he had been accused of sexual impropriety and discharged from the military, this disclosure did not come until the night of the assault, *after* defendant had already befriended WO and his family and had begun to groom WO. There is also no indication that WO was ever made aware of defendant's history before the assault.

With regard to the length of the sentence, the out-of-guidelines sentence was 13 months above the high end of the guidelines range, a relatively modest length of time. See *Walden*, 319 Mich App at 353. Further, defendant's 9-year minimum sentence was less than defendant's original sentence and less than the 10-year sentence sought by the prosecution at resentencing, see *id*. at 354-355 (comparing extent of departure to sentence requested by prosecution when determining whether the out-of-guidelines sentence imposed violated principle of proportionality). There is nothing in the length of the sentence imposed by the trial court that leads us to conclude that it was unreasonable. *Lockridge*, 498 Mich at 392.

The additional arguments raised by defendant in his Standard 4 brief regarding the reasonableness and proportionality of his sentence are also without merit. Defendant makes arguments regarding the proportionality of his sentence that are premised largely on federal sentencing rules as well as pre-*Lockridge* caselaw regarding substantial and compelling reasons for departing from the mandatory sentencing guidelines; but these standards do not govern a determination whether his sentence was reasonable or proportionate in Michigan, post-*Lockridge*. That is, under *Lockridge*, "the sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so," and post-*Lockridge*, "[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness. *Lockridge*, 498 Mich at 392. Further, "reasonableness" is judged on the basis of *Milbourn*'s principle-of-proportionality test and the jurisprudence of this state; federal sentencing rules do not control. See *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).

Additionally, defendant argues that the trial court's sentence is disproportionate because the trial court failed to consider mitigating factors, but has not shown that the trial court was required to consider any of the specific factors raised by defendant on appeal. See *People v Johnson*, 309 Mich App 22, 34; 866 NW2d 883 (2015), rev'd in part on other grounds 497 Mich 1042 (2015). And, in any event, the record demonstrates that the trial court reviewed and considered all the information submitted by defendant, including information regarding his family support and conduct while in prison.

Defendant also appears to argue that he is entitled to a lesser sentence because WO "consented." Legally, the 13-year-old victim could not consent. See *People v Starks*, 473 Mich 227, 235; 701 NW2d 136 (2005). In any event, WO's description of the assault makes it clear that he was not a willing participant. Defendant's "consent" arguments are legally and factually meritless, and he has not demonstrated that the sentence imposed was unreasonable in light of the seriousness of the circumstances surrounding his sexual assault of a 13-year-old boy.

Defendant further asserts that the sentence imposed was "vindictive." This cursory assertion, made without citation to relevant authority, is abandoned. See *Kelly*, 231 Mich App at 640-641. In any event, the sentence imposed as a result of resentencing was less than defendant's original sentence, and defendant points to nothing in this reduced sentence to suggest vindictiveness. See generally *People v Lyons*, 222 Mich App 319, 323; 564 NW2d 114 (1997) ("When a defendant is resentenced by the same judge and the second sentence is *longer* than the first, there is a presumption of vindictiveness.") (emphasis added).

Overall, considering the seriousness of the circumstances surrounding the offense and the offender, the trial court's out-of-guidelines sentence did not violate the principle of proportionality, and was reasonable. See *Lockridge*, 498 Mich at 392; *Dixon-Bey*, 321 Mich App at 520.

## V. CONSTITUTIONALITY OF *LOCKRIDGE*

Finally, in his Standard 4 brief, defendant argues that *Lockridge* is unconstitutional and should be overruled. According to defendant, contrary to *Lockridge*'s holding, a jury should find any facts used to score offense variables. Additionally, defendant asserts that retroactive application of *Lockridge* violates prohibitions on ex post facto laws. These arguments are without merit.

To the extent that defendant asks us to overrule *Lockridge*, this Court is without authority to declare *Lockridge* unconstitutional or to refuse to apply *Lockridge* to the facts of this case. See *People v Mitchell*, 428 Mich 364, 369-370; 408 NW2d 798 (1987). With regard to defendant's ex post facto challenge, this Court has already rejected similar challenges to *Lockridge*, concluding that retroactive application of *Lockridge* to cases, like this one, that were pending on direct review when *Lockridge* was decided does not violate " 'ex post facto-type due process rights of defendants.' " *People v Richards*, 315 Mich App 564, 587; 891 NW2d 911 (2016), rev'd in part on other grounds 501 Mich 921 (2017), quoting *United States v Barton*, 455 F3d 649, 657 (CA 6, 2006). Defendant's argument is therefore without merit.

Affirmed.


/s/ Mark T. Boonstra
/s/ Michael J. Kelly
/s/ Deborah A. Servitto